Daniel ANDERSON, Jr., et al., Individually and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

DOUGLAS & LOMASON COMPANY, et al., Defendants.

No. DC85–160–S–O.

United States District Court, N.D. Mississippi, Delta Division.

Aug. 12, 1988.

Richard T. Seymour, Lawyers' Committee for Civil Rights Under Law, Washington, D.C., Nausead Stewart, Jackson, Miss., Thomas P. Powers, Powers & Lewis, Washington, D.C., for plaintiffs.

George K. McPherson, Jr., Robert N. Godfrey, Smith, Currie & Hancock, Atlanta, Ga., Alfred A. Levingston, Levingston & Levingston, Cleveland, Miss., Clell G. Ward, McLemore & Ward, Greenville,

Miss., for defendant Douglas & Lomason Co.

John L. Maxey, II, Cupit & Maxey, Jackson, Miss., for defendant Aluminum, Brick & Glass Workers Int. Union, etc.

## OPINION

SENTER, Chief Judge.

This employment discrimination case is before the court on the plaintiffs' motion for reconsideration of its January 30, 1987, order which denied in part the plaintiffs' petition for class certification. In essence, this motion renews the plaintiffs' motion for certification of the following subclasses:

(a) On the count arising under 42 U.S.C. § 1981, a class of all black persons who have, at any time between October 1, 1982, and January 17, 1985, unsuccessfully sought to obtain application forms for employment with Douglas & Lomason, either directly or through persons then employed by the company, whether or not such members of the subclass have received an application form at any other time inside or outside the period; and

(b) On the count arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, a class of all black persons who have, at any time between April 20, 1984, and January 17, 1985, unsuccessfully sought to obtain application forms for employment with Douglas & Lomason, either directly or through persons then employed by the company, whether or not such members of the subclass have received an application form at any other time inside or outside this period.

## I. Procedural History

The original complaint was filed July 5, 1985, bringing claims that Douglas & Lomason (D & L) engaged in racially discriminatory hiring and promotion practices in violation of Title VII, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981. By motion filed March 14, 1986, the plaintiffs sought certification of three subclasses—(1) all present and former black employees of the defendant at its Cleveland, Mississippi, plant; (2) all blacks who had applied for employment within the relevant limitations periods, but had been turned down; and (3) the subclass that is the subject of this motion. Two evidentiary hearings were conducted on the class certification issues, concluding in late September, 1986. After briefing by the parties, the court issued its order and opinion of January 30, 1987, certifying two classes under each count of the complaint. These were all present and former black employees at D & L's Cleveland, Mississippi, plant during time periods relative to each of the two counts, and all blacks who applied for work at the plant but were denied employment.

In that opinion, the court refused to certify a subclass of all black individuals who attempted to obtain but were denied applications during the relevant periods under each of the two counts. On June 18, 1987, the plaintiffs submitted a motion asking the court to reconsider its decision to deny certification of this subclass. On June 25, 1987, a motion to intervene was filed in this action by fifty-five proposed plaintiff intervenors. The following day, these same fifty-five individuals filed a separate suit in this court alleging that D & L had discriminated against them and other blacks by distributing applications for employment in a discriminatory manner in violation of both Title VII and 42 U.S.C. § 1981. This case was designated *Bishop v. Douglas & Lomason*, DC87–85–S–O. The motion for reconsideration and proposed complaint in intervention in *Anderson* and the complaint in *Bishop* all request that the court certify a class consisting of those black individuals who sought but were denied applications for employment with the defendant company during the pertinent time frame.

## II. Reconsideration

There is no provision in the Federal Rules of Civil Procedure for a motion to reconsider an interlocutory order. The defendant argues that this motion must be considered under Rule 60 because it was not submitted within the ten-day limit

which must be met to bring it within Rule 59. The defendant further argues that the plaintiffs have not met any of the Rule 60(b) criteria and that the motion to reconsider must therefore be denied. Motions for reconsideration of orders making final disposition of a previous motion are generally treated by this court as Rule 59 or 60 motions. However, the motion to certify a class under Rule 23 is a different sort of creature. Rule 23(c)(1) clearly provides that an order certifying or refusing to certify a class remains open to amendment or modification throughout the course of the trial. "The district court has a continuing power under Fed.R.Civ.P. 23(c)(1). Its certification decision 'is not irreversible and may be altered or amended at a later date.'" *Elster v. Alexander*, 608 F.2d 196, 197 (5th Cir.1979) [quoting 7A C. Wright & A. Miller, Federal Practice and Procedure § 1785 (1972)]. "Under Rule 23, the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir.1983).

■ The named plaintiffs in *Anderson* have asserted in their complaint that at least six of their number were victims of racial discrimination at the hands of the defendant in that they were denied applications for employment at a time when the company was hiring. In attempting to prove this at trial, the plaintiffs would be allowed to introduce evidence of similar treatment of large numbers of blacks. At that point, the court would have to reassess its denial of certification of this subclass. It is unimaginable that the rules do not allow the same evidence to be presented to the court by affidavits prior to trial, in conjunction with a motion by the plaintiffs renewing their earlier motion for class certification. For this reason, the court is of the opinion that the plaintiffs' motion to reconsider should be sustained.

## III. Certification of the Subclass of Blacks who were Denied Applications

■ Rule 23 provides for certification of a class if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of their representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). In addition, the proposed class action must fit within one of the Rule 23(b) categories of cases.

### A. IMPRACTICABILITY

On its initial consideration of certification of the subclass of black individuals who were denied applications for employment, the court found that the proposed class failed to meet the requirement that the class be "so numerous as to make joinder impracticable." The plaintiffs at that time were relying largely on the opinion of their expert to establish that there were large numbers of blacks in this proposed class. The expert, Dr. Bendick, opined that the company's procedure for distributing applications resulted in a pool of applicants that did not accurately reflect the percentage of persons interested in employment with the company who were black. He reached this conclusion by comparing the percentage of actual applicants at D & L with the percentage of clients of Mississippi State Employment Service (MSES) in that area who were black. The court found this statistical evidence unpersuasive for two reasons. First, the MSES client pool contained many individuals who would not be available for employment at D & L. Secondly, this statistical evidence was not very probative on the question of the number of black individuals who sought, but were denied, application forms from D & L. The court also found that plaintiffs' anecdotal evidence disclosed an insufficient number of such individuals to justify certifying a class.

In conjunction with their renewed motion to certify this subclass, the plaintiffs have submitted the affidavits of the fifty-five

(55) named *Bishop* plaintiffs. Each of these affiants swears that he or she sought an application form from D & L on at least one occasion. Many of them identify other blacks who meet the description of the proposed class but who have not submitted affidavits. Including the fifty-five affiants, these affidavits name a total of ninety-five (95)[1] black people who sought but were denied applications. In addition, several of the affidavits make reference to additional, unidentified blacks who have complained of being denied access to forms to apply for work at D & L. These affidavits tend to show that there are well over one hundred persons who fit the description of the proposed subclass.[2] The affidavits also disclose that at least some of these people now live in the City of Chicago and in the States of Texas and Georgia.

As this court noted in its earlier opinion on certification of the various classes in this case,

Practicability of joinder depends on size of the class, ease of identifying its members and determining their addresses, facility of making service of them if joined and their geographic dispersion.

*Garcia v. Gloor,* 609 F.2d 156, 160 (5th Cir.1980). There is no arbitrary minimum number requirement for class certification. In at least three cases from the Fifth Circuit, courts have certified classes with less than one hundred members. *See Jones v. Diamond,* 519 F.2d 1090 (5th Cir.1975) (class of 48 persons approved); *Jack v. American Linen Supply,* 498 F.2d 122 (5th Cir.1974) (51 persons); *NAACP v. City of Corinth,* 83 F.R.D. 46 (N.D.Miss.1979) (83 persons).

Given the size of the proposed class and the evidence of geographic dispersion of its members, the court is of the opinion that it would be impracticable to join all of its members.

**B. COMMONALITY AND TYPICALITY**

The claims of the proposed representatives are that they were victims of racially motivated discrimination practiced by D & L in that they were denied application forms because they were black. The claim of the representatives and of the other members of the class will involve the identical question of law—whether the company's application process was discriminatory. In addition, each of these claims will be advanced by proof that the company engaged in a systematic policy of discrimination in the selection of persons to be admitted to the application process. For these reasons, the court finds that there are questions of both law and fact common to all members of the class.

The court also holds that the claims of the representative parties are typical of the claims of the class. In fact, they are identical. Though there are factual distinctions among the various plaintiffs' claims as to the time that access to an application form was denied and as to which of D & L's employees actually did the denying, the claim is exactly the same in each case. Each of the members of the class claims to have gone to D & L's plant at a time when they believed the company to be hiring workers; to have asked either the guard at the gate or an employee in the personnel office for an application; and to have been told either that there were no more applications, that the company was no longer taking applications, or that the company was not hiring.

**C. FAIR AND ADEQUATE REPRESENTATION**

The court in its January 30, 1987, opinion has already decided this question with reference to the adequacy of representation

---

**1.** This figure attempts to take into account the several duplications which occurred when either more than one affiant listed the same friend as a person he or she knew who had been denied an application or one affiant listed another affiant.

**2.** The court notes that eighteen of the original fifty-five affiants entered motions to withdraw as named plaintiffs in *Bishop* and as proposed plaintiff/intervenors in *Anderson.* However, the granting of these motions was without prejudice to the right of any of these individuals to claim membership in any class that might be certified.

by the original named plaintiffs of the classes certified at that time. Six of those named plaintiffs are designated as representatives of the subclass for which certification is currently being sought. For the same reasons outlined in its earlier opinion, the court finds that "the representative parties (and their counsel) will fairly and adequately protect the interests of the class."

## D. RULE 23(b) REQUIREMENTS

In addition to satisfying the four subsection 23(a) requirements, the action to be maintained as a class action must fall within one of the categories of Rule 23(b). According to the plaintiffs' allegations, D & L has "acted on grounds generally applicable to the class" by distributing its application forms in a discriminatory manner. Injunctive relief with respect to the class would be an appropriate remedy if the court should hold that D & L had acted as alleged. The court therefore finds that the subsection 23(b)(2) requirements are met.

The court also "finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). No member of the proposed class is on record as being interested in maintaining a separate action; no litigation concerning this particular controversy has yet been commenced in any other court; and the overwhelming majority of the members of the class live in the Western Division of the federal district and the D & L plant is located there, so concentrating the litigation in this forum is desirable.

## E. SIGNIFICANT PROOF

■ The defendant cites *Hawkins v. Fulton County,* 95 F.R.D. 88, 93 (N.D.Ga. 1982) for the proposition that there must be a showing of *"[s]ignificant proof* that an employer operated under a general policy of discrimination" before a class can be certified in a Title VII disparate treatment case. This citation out of context is mis-

leading. The "significant proof" language of *Hawkins* is taken from *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 159 n. 15, 102 S.Ct. 2364, 2371 n. 15, 72 L.Ed.2d 740 (1982). There the Court said "Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decision making processes." This full statement makes it clear that the requirement of significant proof has no application to the certification of the subclass of all black potential applicants who were denied applications. The *Falcon* Court was dealing with the across-the-board approach to class certification which was the rule in this circuit until the *Falcon* decision. The holding of the Court was simply that Title VII had not relaxed the requirements of Rule 23 and each of the prerequisites to class certification set out in the rule had to be met in Title VII cases as in other cases. Certification of a class of all Hispanics refused employment or denied promotion where the only representative was an Hispanic who worked for the company was not proper because the commonality and typicality requirements were not met. Footnote 15 merely points out that certification of the class recognized in *Falcon* may have been proper if there was significant proof that there were common issues of law and fact between the hiring and promotion claims. Neither *Falcon* nor *Hawkins* establishes a requirement that the Title VII disparate treatment plaintiff seeking certification of a class must prove his case on the merits in order to gain certification of the class.

> The question of class certification is a procedural one, distinct from the merits of the action. Whether a class should be certified depends entirely on whether the proposal satisfies the requirements of Fed.R.Civ.P. 23.

*Garcia v. Gloor,* 609 F.2d at 160 (citations omitted).

The defendant has submitted affidavits from ten white people who aver that they

sought but were denied application forms from D & L. Again, these affidavits miss the point of this motion to certify a class. They go to the merits of the claim that the procedure was discriminatory, not to the question of whether there exists a class of blacks who were denied applications. The issue of whether the proposed subclass meets the requirements of Rule 23 is entirely independent of the issue of whether the challenged practice was discriminatory. *See Redditt v. Mississippi Extended Care Centers, Inc.*, 718 F.2d 1381, 1387–88 (5th Cir.1983) (holding that lower court abused its discretion when it refused to certify class because plaintiff had not shown that the defendant practiced racial discrimination).

### IV. Conclusion

The court holds that the subclasses proposed by plaintiffs in this motion meet the requirements of Rule 23(a) and (b). This holding moots the petition to intervene by the fifty-five named class members. It also moots Plaintiffs' protective motion to certify the class which was submitted in *Bishop*. In that motion, the plaintiffs state that they "will be willing to take a voluntary dismissal of this action (*Bishop* ), without prejudice, in the event that attempted applicants are included in the *Anderson* class." Treating this as a conditional motion for voluntary dismissal pursuant to Fed.R.Civ.P. 41(a)(2), the court is of the opinion that *Bishop v. Douglas & Lomason Co.*, DC87–85–S–O, should be dismissed without prejudice.

Orders in conformity with this opinion will be entered.