[No. A051130. First Dist., Div. Two. Oct. 29, 1991.]

CHARLES STEPHEN, Plaintiff and Appellant, v.
ENTERPRISE RENT-A-CAR OF SAN FRANCISCO et al., Defendants
and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

COUNSEL

Ernest M. Thayer and Joseph Wood for Plaintiff and Appellant.

Adams, Duque & Hazeltine, George G. Weickhardt, Sonnenschein, Nath & Rosenthal, Robert F. Scoular, John L. Guldimann, Crosby, Heafey, Roach & May, William A. Quinby, Joan M. Haratani, Thompson & Mitchell, Charles A. Newman and Mike Bartolacci for Defendants and Respondents.

## OPINION

SMITH, J.—Plaintiff Charles Stephen brought this individual and purported class action against defendants Enterprise Rent-A-Car of San Francisco and others (collectively Enterprise)[1] seeking relief, on various theories, for alleged unconscionably high rates charged by Enterprise for a risk-allocation option called collision damage waiver (CDW) in its rental contracts. Stephen appeals from an order denying, as untimely, his "Renewed Motion for Class Certification," brought under Code of Civil Procedure section 1008, subdivision (b). We will affirm the order.

### BACKGROUND

The following fact recital honors a stipulated protective order limiting the disclosure of commercially sensitive matters in the record. We confine our recital to the essential events necessary to frame the issues.

Stephen filed the action in July 1988 as a purported class action. He brought a motion for class certification in March 1989 to which Enterprise filed voluminous opposition on the merits. The court did not reach the merits. It ordered the matter off calendar for failure to comply with local rules.

Stephen filed a second motion for class certification in September 1989, after intervening discovery. Opposition focused, as it had before, on a claimed lack of admissible evidence on class issues of commonality, typicality/adequacy and ascertainability. (See *Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].) At a hearing on

---

[1]The other named defendants are Enterprise Leasing Company—West (doing business as Enterprise Rent-A-Car Company West), Enterprise Rent-A-Car Company of Los Angeles and Enterprise Rent-A-Car Company, a Missouri corporation. All defendants joined together in arguments below and are respondents on this appeal, where they join in briefing presented by Enterprise Rent-A-Car of San Francisco.

October 31, Enterprise challenged in particular a purported expert whose declaration Stephen offered for the first time in reply papers. Enterprise challenged the expert's qualifications and reliance on hearsay. The court continued the hearing to allow Enterprise to depose the expert and, apparently to bolster the commonality showing, allowed Stephen to conduct discovery on costs versus revenues for CDW. The court set a schedule for discovery and submitting further evidence and briefing. A hearing was set for six weeks later, December 13. The schedule was revised and the hearing reset for December 20 on Stephen's motion.

The parties meanwhile submitted evidence and arguments on what costs were properly allocable to CDW. Stephen supported his position with raw cost data and a declaration from counsel; Enterprise submitted a contrary analysis in a declaration by an accounting expert. On the court's own motion, the hearing was continued another three weeks. Stephen did not seek to present further evidence during that time, although he did object on December 29 that the accounting expert's declaration had been untimely and improperly submitted.

The hearing was held on January 11, 1990. Argument centered on the cost allocation problem and, more generally, on the broader class issues. The motion was submitted and later that day denied by minute order. A formal, signed order filed on January 23 stated: "Plaintiff's Motion for Class Certification is denied." Notice of entry of the order was mailed on January 24. Stephen did not appeal the order, and it became final on March 26, 1990. (Cal. Rules of Court, rule 2(a).)

On July 7, Stephen filed a "Renewed Motion for Class Certification" purportedly "pursuant to Code of Civil Procedure section 1008(b), on the basis of new facts concerning cost-price disparity and rates of profit realized by defendants from the sale of [CDW]." The asserted new facts consisted of cost data from one defendant and a cost-allocation expert's analysis and deposition testimony.

Enterprise opposed the motion in part as untimely and not based on new facts. After extensive briefing and a hearing, the court denied the motion as untimely. Stephen appeals after entry of a formal order.

## APPEAL

Enterprise contends that a motion to reconsider the order denying the second class certification motion, which order was appealable and had become final, did not lie. Stephen concedes that the prior order denying certification was final but counters that a "renewed" motion was authorized

(1) on new evidence (Code Civ. Proc., § 1008, subd. (b))[2] regardless of the time lapse and (2) under class action policy assertedly allowing successive certification motions to be brought up until the time of final judgment. In effect, he urges that his appeal is not from the order denying his second certification motion, but from an order erroneously denying him the opportunity to try again at class certification. He asks us to reverse and direct that his renewed motion be considered on the merits.

I

■ We hold, first, that no policy in the law allowed Stephen to "renew" a class certification motion which had been denied on the merits by a final, appealable order.

■ The one-final-judgment rule generally precludes piecemeal litigation through appeals from orders which dispose of less than an entire action. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 43, pp. 66-67; *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 806 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513] (*Vasquez*).) An order denying class certification does not finally dispose of an action since it leaves it intact as to the *individual* plaintiff. However, the order is appealable if it effectively terminates the entire action as to the class, in legal effect being "tantamount to a dismissal of the action as to all members of the class other than plaintiff. [Citations.]" (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 699 [63 Cal.Rptr. 724, 433 P.2d 732]; *Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d 462, 470.) The appeal is allowed, as a matter of state law policy, because the order has "the 'death knell' effect of making further proceedings in the action impractical . . . ." (*General Motors Corp.* v. *Superior Court* (1988) 199 Cal.App.3d 247, 251 [244 Cal.Rptr. 776].) Federal law, by contrast, while acknowledging death-knell consequences, denies a right of direct appeal in any circumstances. (*Ibid.*; *Coopers & Lybrand* v. *Livesay* (1978) 437 U.S. 463, 469-470 [57 L.Ed.2d 351, 358, 98 S.Ct. 2454].)

■ Because California allows direct appeals of death-knell orders, a plaintiff who fails to appeal from one loses forever the right to attack it. The order becomes final and binding. Two cases from this district illustrate the concept, holding that plaintiffs could not, on appeal from final judgments on the merits of their cases, attack final orders denying class certification. (*Guenter* v. *Lomas & Nettleton Co.* (1983) 140 Cal.App.3d 460, 465 [189 Cal.Rptr. 470]; *Morrissey* v. *City and County of San Francisco* (1977) 75 Cal.App.3d 903, 906-908 [142 Cal.Rptr. 527].) This, of course, is the reverse of federal law, which makes certification orders reviewable *only* on appeal

---

[2]All further section references are to the Code of Civil Procedure unless noted otherwise.

from the final judgment. (*General Motors Corp.* v. *Superior Court, supra*, 199 Cal.App.3d 247, 251.)

The order denying Stephen's second certification motion was a "death knell" order precluding maintenance of a class action on any cause of action. It was on the merits, was never appealed and became final. ■■■ ■ Stephen urges that it was not binding, however, because state law favors bringing successive motions on class certification.[3] We disagree in this context.

Federal courts interpreting rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.) (hereafter rule 23) freely allow successive certification motions. This is because rule 23 encourages certification decisions early in the proceedings, when discovery is incomplete and facts bearing on the propriety of maintaining a class action may be unknown, and because it contemplates that initial orders may be conditional and altered or amended before a judgment on the merits. Trial courts thus should stand ready to modify and amend initial rulings as the case and record develop. "Under Rule 23 the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." (*Richardson* v. *Byrd* (5th Cir. 1983) 709 F.2d 1016, 1019; *Elster* v. *Alexander* (5th Cir. 1979) 608 F.2d 196, 197; *Anderson* v. *Douglas & Lomason Co.* (N.D.Miss. 1988) 122 F.R.D. 502, 504; *Harriss* v. *Pan American World Airways, Inc.* (N.D.Cal. 1977) 74 F.R.D. 24, 36-38.) Cases have applied that rationale to allow a renewed certification motion where a prior one has been denied. (See, e.g., *Elster* v. *Alexander, supra*, 608 F.2d at p. 197; *Anderson* v. *Douglas & Lomason Co., supra*, 122 F.R.D. at pp. 503-504.)

California cases drawing on rule 23 for guidance in the development of state law (§ 382; Civ. Code, § 1750 et seq.) have seen a similar need for flexibility. "In the event of a hiatus [in state law], rule 23 . . . prescribes procedural devices which a trial court may find useful. (Cf. *Daar* v. *Yellow Cab Co., supra*, 67 Cal.2d 695, 709.) It is desirable for the trial court to retain some measure of flexibility in the pretrial and trial of a class action, for conceivably even after an initial determination of the propriety of such an

---

[3]Stephen presses the argument here but raised below only his argument that a renewed motion was allowed under section 1008. We indulge the broader policy argument only because it appears to pose a pure question of law which can be raised for the first time on appeal. (Cf. *Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 340-341 [303 P.2d 738].) Our rejection of the argument outright eliminates a problem that the trial court had no occasion to pass on possible factual issues such as whether Stephen presented a sufficiently different set of facts to warrant a renewed motion.

action the trial court may discover subsequently that it is not appropriate. For example, it is possible that, after notice to the class members, the court might find that an insufficient number of the class desires to participate in the suit to justify its maintenance as a class action and may determine that joinder or some other procedural device would be a more suitable method of proceeding. Subdivision (c)(1) of rule 23 provides that the trial court's initial determination may be conditional and may be altered or amended before a decision on the merits. As another example, it is possible that the court will find that efficiency would be promoted if the class were divided into subclasses. Subdivision (4)(B) of rule 23 contemplates such a procedure." (*Vasquez, supra,* 4 Cal.3d 800, 821.)

The Supreme Court faced such facts in *Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355 [134 Cal.Rptr. 388, 556 P.2d 750] (*Occidental Land*). It rejected a claim that the defendant was guilty of laches for waiting 18 months after an initial certification ruling before moving to decertify, noting: "During the months following the court's certification order, defendant conducted discovery proceedings in order to support a motion to decertify the action. It then filed its motion based on evidence not before the court in the prior proceedings. This type of procedure is authorized by *Vasquez*." (*Id.,* at p. 360.)

*Vasquez* and *Occidental Land* endorse bringing successive motions on new evidence after a court has initially *certified* a class. No case of which we are aware, however, has allowed relitigation where, as here, the court initially and on the merits *denied* certification. In fact, a case closely on point has rejected the idea in principle, explaining: "The context of [*Occidental Land*] may be likened to the continuance of an action after the trial court has overruled a general demurrer. Despite that ruling the court may at any time thereafter dismiss the complaint for failure to state a cause of action. [Citations.] In such a case the first order was not legally, or reasonably, appealable. But if in [*Occidental Land*] the initial ruling had *denied* certification as a class action it would, as to the class, have been analogous to an order of dismissal after the sustaining of a general demurrer without leave to amend. In that event, as in *Daar* v. *Yellow Cab Co.,* 'the order is tantamount to a dismissal of the action . . . .' From such an order an appeal logically, and legally, lies." (*Morrissey* v. *City and County of San Francisco, supra,* 75 Cal.App.3d 903, 908.) On appeal from a final judgment, plaintiff Morrissey was held barred from complaining that the superior court should have granted her motion at trial to add an unnamed plaintiff to protect the interests of the class. "*[A]t the trial*," the Court of Appeal reasoned, "it had already been conclusively established, by a final unappealed order, that the purported class action was not entitled to certification as such." (*Ibid.*)

To the same effect is *Guenter* v. *Lomas & Nettleton Co., supra,* 140 Cal.App.3d 460, where a plaintiff brought a motion to certify which was denied "without prejudice" in the first year of the action. He brought another motion to certify some three years later, which was denied again, and then appealed from the denial and another order. (*Id.,* at p. 463.) Any review of the original denial, which the appellate court found to be on the merits and appealable despite the "without prejudice" qualifier, was held foreclosed by failure to appeal it earlier. (*Id.,* at pp. 464-466.) Lack of a timely appeal left the order "final and binding" on the plaintiff and the court. (*Id.,* at p. 465.) It is unclear from the opinion whether the second certification motion was brought under section 1008, but the reviewing court found no need to review its denial.

Those cases, while not specifically addressing section 1008, are directly at odds with allowing a plaintiff to "renew" a motion that has produced an unappealed and final order denying class certification. This is the practical consequence of this state allowing direct appeals of death-knell orders. If the law allowed both those appeals *and* successive motions to certify, we could have endless appeals violating the state's policy against piecemeal appellate litigation. No such problem arises under federal law since review of all such orders must await a single appeal from a single final judgment, by which time only the more recent class rulings are apt to be attacked in any event.

■ It is only in the *absence* of relevant state precedent that courts turn to federal law and rule 23 for guidance. (*Bell* v. *American Title Ins. Co.* (1991) 226 Cal.App.3d 1589, 1603 [277 Cal.Rptr. 583]; *Vasquez, supra,* 4 Cal.3d 800, 821.) State and federal courts parted company on the appealability issue 24 years ago in *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695. It follows from that split and the cases discussed above that state and federal law diverge on allowing successive motions to certify. ■ Like federal policy, state policy favors prompt and early class determinations. (*Massey* v. *Bank of America* (1976) 56 Cal.App.3d 29, 32 [128 Cal.Rptr. 144] [dismissal after a nearly five-year delay].) ■ However, to follow federal policy on renewed motions after a death-knell denial is impractical, and state policy can be administered with enough flexibility to avoid inequity. Plaintiffs lacking adequate evidence on class issues may reasonably defer moving to certify or seek a continuance to gather evidence, and trial courts should avoid ruling on the merits until satisfied that a plaintiff has had a fair opportunity to present the case for certification. Also, the right of appeal and consequent limitation on bringing renewal motions applies only to death-knell rulings, where a plaintiff has a right to immediate appellate review to correct error. Appellate courts will be sensitive to claimed abuses of discretion when reviewing such orders.

Local court rules tailored to class actions can also promote fairness and flexibility. Our Supreme Court 20 years ago urged the adoption of "pragmatic procedural devices . . . to simplify [this] potentially complex litigation while at the same time protecting the rights of all the parties." (*Vasquez, supra,* 4 Cal.3d 800, 820.) The superior courts for the County of Los Angeles and the City and County of San Francisco have responded, each adopting a Manual for the Conduct of Pretrial Proceedings in Class Actions (hereafter cited together as Class Action Manual unless noted otherwise). (*Cooper* v. *American Sav. & Loan Assn.* (1976) 55 Cal.App.3d 274, 278-279 [127 Cal.Rptr. 579].)

Parallel-numbered sections of each provide for an early, informal conference to settle class issues by stipulation (Class Action Manual, §§ 411-416) and then possible bifurcation and early court resolution of remaining class (or liability) issues (*id.,* §§ 401, 421-427, 441). Of special note here, "A motion to establish a precedence among issues in discovery may be made. (E.g., where discovery on the issue of liability may be expensive and time consuming, a motion may be made limiting discovery to only class issues until an interlocutory order is made concerning those issues.)" (*Id.,* § 427.7, subd. (g).) The manuals envision continuances of hearing and document-submission dates either by stipulation or for good cause shown. (*Id.,* § 425.)[4] In cases where discovery on the merits appears to have overlapping relevance to class issues, a court always has the option of deferring any decision on class issues until a fair opportunity for that discovery has been afforded. (*Harriss* v. *Pan American World Airways, Inc., supra,* 74 F.R.D. 24, 37.) We are confident that procedural devices like those in the Class Action Manual—whether formally adopted or used for guidance (cf. *Vasquez, supra,* 4 Cal.3d 800, 820)—can help accommodate all parties' interests fairly and expeditiously.

Fairness and flexibility appear in this case. The action was filed in July 1988, and the original motion brought nine months later was never addressed on the merits. The second was brought 14 months into the case, in September 1989. Before ruling, the court held two hearings and twice continued the matter to allow Stephen time to obtain and present additional discovery.

---

[4]The manuals also accord with our holding that death-knell orders denying class certification are final and not renewable. San Francisco's Class Action Manual section 428 provides (italics ours): "1. At the conclusion of each hearing, the court will make an order upon the issues presented to it in said hearing. *The order will be final if it dismisses the maintainability of the action as a class action.* Upon request of counsel, the court will make findings of fact a [*sic*] conclusions of law in support of its order dismissing the class. If the order does not dismiss the maintainability of the action as a class action, it will be interlocutory in nature and may be rescinded or modified as the changed circumstances of the class, its representative or the particular action otherwise require." The Los Angeles version (§ 428.1) substitutes "a statement of decision" for findings of fact and conclusions of law.

Stephen never moved to compel discovery. The court in the end allowed him to introduce a new (cost-price) theory. The ruling and judgment came at the close of January 1990, over 18 months into the case, without Stephen seeking additional time.

Stephen forfeited his right to appeal and with it his right to complain of any conceivable unfairness in the court's handling of the matter. No appeal having been taken, the ruling became final and binding. State law policy did not allow him a "renewed" opportunity to seek certification.

## II

■ We also reject the argument that section 1008 allowed the motion. Subdivision (a) of the section allows any affected party to apply for reconsideration of an order, based on an alleged different state of facts, within 10 days after knowledge of the order. Subdivision (b) allows the party who originally applied for an order to apply for the same order, also based on an alleged different state of facts, provided the party shows by affidavit the history of the prior application and the alleged new facts.[5]

The section as it currently reads is the product of redrafting in 1978. (Stats. 1978, ch. 631, § 2, p. 2084.) ■ In subdivision (a), the Legislature for the first time authorized "reconsideration" motions, allowing any affected party to apply for one and imposing the 10-day time limit. (*Graham* v. *Hansen* (1982) 128 Cal.App.3d 965, 970 [180 Cal.Rptr. 604].) In subdivision (b), however, "the Legislature left the prior law virtually unchanged with respect to subsequent applications by the moving party for the same order. As did its predecessor section, subdivision (b) applies to renewals based upon 'new' facts and imposes no time limitations on such motions." (*Id.*, at pp. 970-971, fn. omitted.) Two distinct remedies are prescribed. (*Id.*, at p. 971.)

---

[5]Section 1008 provides: "(a) When an application for an order has been made to a judge, or to the court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within ten (10) days after knowledge of the order and based upon an alleged different state of facts may, make application to the same judge who made the order, to reconsider the matter and modify, amend or revoke the prior order.

"(b) When the party who originally made an application for an order which was refused in whole or part, or granted conditionally or on terms, makes a subsequent application for the same order upon an alleged different state of facts, it shall be shown by affidavit what application was made before, when and to what judge, what order or decision was made thereon, and what new facts are claimed to be shown. For a failure to comply with this requirement, any order made on such subsequent application may be revoked or set aside on ex parte motion.

"(c) A violation of this section may be punished as a contempt; and an order made contrary thereto may be revoked by the judge or commissioner who made it, or vacated by a judge of the court in which the action or proceeding is pending."

Stephen's "renewed" motion for class certification came nearly six months after he had notice of the order denying his second motion, and he concedes that it was not timely under subdivision (a). The court below found it "untimely" under subdivision (b) as well. We uphold that conclusion, assuming for sake of discussion that the motion could be brought at all.[6]

We have already held that California does not, as a matter of precedent or policy, allow relitigation of whether to certify a class once a death-knell order denying certification has become final. The order, if not appealed, becomes *binding* on the parties and the court. (*Morrissey* v. *City and County of San Francisco, supra,* 75 Cal.App.3d 903, 908; *Guenter* v. *Lomas & Nettleton Co., supra,* 140 Cal.App.3d 460, 465.) "An order, whatever its form, that has the effect of denying certification as a class action, *disposes of that action* and is an appealable final judgment." (Italics added.) (9 Witkin, Cal. Procedure, *supra,* § 52, p. 75, citing *Morrissey* and *Guenter, supra.*)

We hold that a plaintiff cannot invoke section 1008, subdivision (b), to circumvent that principle. Otherwise, the disposition of the action would only be as to the particular state of facts presented when the prior motion was denied. New appealable orders could result each time new facts were offered. This would pose an intolerable expansion of the right to appeal since the "new facts" requirement of section 1008, subdivision (b), has been interpreted to include not just facts previously unknown, but also "new evidence of the meaning of those facts . . . ." (*Film Packages, Inc.* v. *Brandywine Film Productions, Ltd.* (1987) 193 Cal.App.3d 824, 829 [238 Cal.Rptr. 623].) There would be little incentive for plaintiffs to marshal evidence efficiently if they could reopen the matter by offering, as Stephen proposes, "liberalized" showings of "mere testimony casting old facts in a new light."

---

[6]Division Two of the Fourth District Court of Appeal in *Passavanti* v. *Williams* (1990) 225 Cal.App.3d 1602 [275 Cal.Rptr. 887], has recently disapproved several of its own and other published opinions to the extent that they hold or imply that section 1008 authorizes motions to reconsider entered "judgments" as opposed to mere "orders." True "judgments," it reasoned, may be attacked for judicial error only by prescribed procedures such as motions for new trial or to vacate once they are signed and entered; a postjudgment motion for reconsideration does not lie. (*Id.,* at p. 1606-1608; *Ten Eyck* v. *Industrial Forklifts Co.* (1989) 216 Cal.App.3d 540, 545 [265 Cal.Rptr. 29].)

Using this analysis, Enterprise urges us to hold that a death-knell "order" is in effect a "judgment" and that, since Stephen's motion under section 1008 came long after an entry of judgment, the motion was improper. Stephen counters that the *Passavanti* rationale only applies to motions to "reconsider" brought under subdivision (*a*) of section 1008 because a motion under subdivision (b) involves a completely new application for relief, not an attack on the prior order.

We need not resolve the issue. Even if Stephen is correct, his motion was late because it came after the earlier order (or judgment) was final. This is a sufficient basis for affirmance.

Thus, assuming for sake of discussion that Stephen's renewed motion under subdivision (b) was proper at all (see fn. 6, *ante*), we hold that it was ineffective once the appealable prior order denying class certification had become final (Cal. Rules of Court, rule 2(a)). We note that Stephen did not seek relief under the more rigorous showing of mistake, inadvertence, surprise or excusable neglect prescribed by section 473. (See *Guenter* v. *Lomas & Nettleton Co., supra*, 140 Cal.App.3d 460, 466; *Graham* v. *Hansen, supra*, 128 Cal.App.3d 965, 970; *Farrar* v. *McCormick* (1972) 25 Cal.App.3d 701, 706 [102 Cal.Rptr. 190].)

Our holding imposes a practical time limitation on applications under subdivision (b), but case law has already imposed analogous limitations. ▮ For example, subdivision (a) imposes a 10-day limit on *bringing* a motion but sets no limit on the time for *ruling* on the motion. Nevertheless, a timely brought motion to reconsider an appealable order granting a new trial, in order to be consistent with the jurisdictional 60-day limit for acting on new trial motions, must be ruled on within that 60 days or is deemed denied by operation of law. (*Jones* v. *Sieve* (1988) 203 Cal.App.3d 359, 368-371 [249 Cal.Rptr. 821].) Thus, "the onus is on the party seeking reconsideration under section 1008 . . . to do so within the 60-day juris-dictional time frame." (*Id.*, at p. 370.) By parallel reasoning, an order denying a timely brought motion to reconsider an appealable dismissal order must be entered within the jurisdictional 60 days following entry of judg-ment or it will not extend (Cal. Rules of Court, rule 3(a)) the time in which to file a notice of appeal from the dismissal order. (*Miller* v. *United Services Automobile Assn.* (1989) 213 Cal.App.3d 222, 225-228 [261 Cal.Rptr. 515].) If jurisdictional considerations compel implying time limits on motions under subdivision (a) of section 1008, they must in some cases also limit subdivision (b). An open-ended time for "renewed" motions is incompatible with California law deeming death-knell certification denials final and bind-ing when not timely appealed. The onus is thus on a plaintiff to bring such a motion within whatever time limit (Cal. Rules of Court, rule 2) applies for fixing the finality of the order.

Stephen's motion was brought too late, as the superior court correctly ruled. It is thus unnecessary to decide whether he presented new facts sufficient to justify the renewal.

III*

* * * * * * * * * * * * * * * * * * * * * * * *

*See footnote, *ante*, page 806.

## DISPOSITION

The order is affirmed.[7]

Kline, P. J., and Peterson, J., concurred.

---

[7]The parties informed us after oral argument that they are nearing a settlement entailing the dismissal of this appeal. Given the continuing public interest in the issues raised, the likelihood of their recurrence and the tendency of settlement to thwart review, we exercise our discretion against dismissal (*Okuda* v. *Superior Court* (1983) 144 Cal.App.3d 135, 137, fn. 1 [192 Cal.Rptr. 388]), having first forewarned the parties.