Filed 11/8/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

EMIELOU WILLIAMS,

      Plaintiff and Appellant,

v.

IMPAX LABORATORIES, INC.,

      Defendant and Respondent.

A155479

(Alameda County
Super. Ct. No. RG17870167)

Plaintiff Emielou Williams filed a class complaint against her former employer, Impax Laboratories, Inc., alleging violations of Labor Code provisions governing wages and hours. The trial court granted Impax's motion to strike the class allegations, ruling that Williams was not an adequate class representative. The court granted her leave to amend the complaint to add another named plaintiff, but instead of doing so she filed an amended complaint reiterating the stricken class allegations. Relying on its prior order, the court again struck those allegations.

Williams now appeals from the second order, claiming the trial court erred by concluding she is not an adequate class representative. She also claims the order must be reversed because the court thwarted her from pursuing discovery of the class list, which she needed to name another class representative. We agree with Impax, however, that the order is not appealable under the death knell doctrine. This doctrine authorizes an interlocutory appeal of the first, but only the first, order in a case that extinguishes all of a plaintiff's class claims. As a result, we do not address the merits of Williams's contentions and instead dismiss the appeal.

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

Williams stopped working for Impax in December 2013. Almost four years later, in August 2017, she filed her original complaint, which alleged one cause of action under the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.). This cause of action identified nine types of unlawful business practices in which Impax allegedly engaged, including failing to pay overtime wages, provide meal and rest periods, and pay minimum wages. Williams brought the complaint on behalf of herself and a similarly situated class, proposed to consist of all individuals employed by Impax at any time during the previous four years.

Impax filed a motion to strike portions of the complaint, including the class allegations. It argued that Williams was not an adequate class representative because the statute of limitations on her personal claims had already run and she therefore could not "assert the types of claims reasonably expected to be raised by other members of the class"—direct claims for penalties under the Labor Code, including under the Private Attorneys General Act (PAGA; Lab. Code, § 2699). Williams responded that the adequacy issue should not be resolved at the pleading stage and that her litigation would not waive other class members' claims for penalties.

In a December 2017 order, the trial court struck the class allegations, agreeing with Impax that "[i]n light of her inability to pursue all remedies otherwise available to the putative class, [Williams] cannot be a suitable class representative." After noting Williams's suggestion that she could " 'add[] an additional class representative with standing' " to pursue the direct Labor Code claims, the court gave her "45 days leave to amend" and stated, "In the court's view, in order for this case to emerge from the pleading stage as a putative class action, such an addition must happen now, rather than later." Separately, the court denied Williams's request for permission to conduct discovery to locate other class representatives, determining that the "request [was] not properly before the court in the context of these challenges to the pleadings."

2

Williams neither sought review of the December 2017 order nor amended her complaint to name a new plaintiff. Instead, she filed a first amended complaint.[1] As she acknowledges, the first amended complaint essentially re-alleged the class contentions from her original complaint, expanding the paragraph involving her adequacy as a class representative to respond to points raised by Impax and the December 2017 order.

Impax filed another motion to strike, contending that by adding back in class allegations without a new plaintiff, Williams was "improperly attempt[ing] to dispute [the December 2017 order's] finding that she is not an adequate class representative." Williams responded that the December 2017 order was "impossible" to comply with, as she had only 45 days to amend to add a PAGA claim even though that statute requires an employee to wait 65 days after giving notice to the Labor and Workforce Development Agency before bringing suit. (See Lab. Code, § 2699.3.) She also complained that she sought discovery from Impax to locate another plaintiff shortly after filing her original complaint, but Impax refused to comply. Although she had asked the trial court to schedule an informal discovery conference on the issue, it had not yet done so, preventing her from filing a motion to compel under the court's local discovery rules.

On September 21, 2018, the trial court granted Impax's motion to strike the class allegations, stating that the December 2017 order "found that [Williams] cannot be a suitable class representative." The court explained that the earlier order "reasoned that [Williams's] complaint would have her asserting a UCL claim on behalf of a putative class. [Her] UCL claim would be limited to obtaining the UCL remedies but the claim preclusion effect of that claim would likely be to preclude any of the absent class members who had claims within the Labor Code statute of limitations from pursuing Labor Code claims that were part of the 'unlawful' part of the UCL claim. The court determined on the pleadings that this [preclusive effect] would not be in the interests of

---

[1] In January 2018, Williams inadvertently filed the amended complaint under the wrong case number. The trial court granted her motion for relief under Code of Civil Procedure section 473 and permitted her to re-file the complaint with a corrected case number, which she did in March of that year.

the absent class members and therefore that [Williams] could not be an adequate class representative." The court directed Williams to file a second amended complaint by October 5, refusing to "extend the time for filing [it] to permit [her] to locate a new plaintiff who might be an adequate class representative."

The trial court also addressed the discovery issue as follows: "There is no motion before the court to compel or preclude discovery of the names of similarly situated employees. That said, the scope of discovery is determined by the scope of the complaint, and the Second Amended Complaint will not have class allegations. Were [Williams] to seek the names of similarly situated employees, then the court would review any motion and consider relevance to the claims, burden on the defendant, and the privacy concerns of the similarly situated employees."

On September 28, 2018, Williams filed a notice of appeal. The notice of appeal identified the order appealed from as entered on September 21, 2018, and described it as "[a]n order granting a motion to strike class allegations, appealable under the 'death knell' doctrine."

## II.
### DISCUSSION

Impax contends that we lack jurisdiction because only the December 2017 order, not the September 2018 order, was appealable under the death knell doctrine. We agree.

The death knell doctrine is a " 'tightly defined and narrow' " exception to the one-final-judgment rule, which generally precludes piecemeal litigation through appeals from orders that dispose of less than an entire action. (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 760 (*Baycol*).) Under this exception, an order is appealable when "it effectively terminates the entire action as to [a] class, in legal effect being 'tantamount to a dismissal of the action as to all members of the class other than plaintiff.' " (*Stephen v. Enterprise Rent-A-Car* (1991) 235 Cal.App.3d 806, 811, quoting *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699.) Thus, an order determining that a plaintiff cannot "maintain his [or her] claims as a class action but [can] seek individual relief" is immediately appealable. (*Baycol*, at pp. 757, 760.) Because death knell orders are directly appealable,

4

"a plaintiff who fails to appeal from one loses forever the right to attack it.  The order becomes final and binding."  (*Stephen*, at p. 811.)

The rationale for the death knell doctrine is that these rulings amount to final judgments as to the class claims and would be "effectively immunized . . . from appellate review" if no immediate appeal were permitted.  (*Baycol*, *supra*, 51 Cal.4th at pp. 757–758.)  This is because " 'without the incentive of a possible group recovery the individual plaintiff may find it economically imprudent to pursue his [or her] lawsuit to a final judgment and then seek appellate review of an adverse class determination.' "  (*Id.* at p. 758.)

To qualify as appealable under the death knell doctrine, an order must "(1) amount[] to a de facto final judgment for absent plaintiffs, under circumstances where (2) the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no *formal* final judgment will ever be entered."  (*Baycol*, *supra*, 51 Cal.4th at p. 759.)  Among the orders that generally qualify are "[a] trial court's decision to sustain a demurrer to class allegations without leave to amend, deny a motion for class certification, or grant a motion to decertify a class."  (*Naranjo v. Spectrum Security Services, Inc.* (2019) 40 Cal.App.5th 444, 478.)  What ultimately matters, however, is "not the form of the order or judgment but its impact."  (*Baycol*, at p. 757.)

According to Impax, the December 2017 order was appealable under the death knell doctrine, but the September 2018 order was not.  It argues that we therefore lack jurisdiction to review the striking of the class allegations, whether we consider this an untimely appeal from the earlier order or a timely appeal from the later, non-appealable order.  Williams responds that the December 2017 order was not appealable under the death knell doctrine because she was given leave to amend the class allegations, and it was not until the trial court definitively signaled in the September 2018 order that "the

Second Amended Complaint will not have class allegations" that the class claims were "demolished."[2] Impax has the better argument.

*Alch v. Superior Court* (2004) 122 Cal.App.4th 339 (*Alch*) is instructive. There, television writers brought class action lawsuits against numerous defendants, including talent agencies, alleging age discrimination. (*Id.* at p. 350.) Among several other issues, *Alch* addressed the appealability of an order that sustained the talent agencies' demurrers to class claims under the Fair Employment and Housing Act (FEHA) and Unruh Civil Rights Act (Unruh Act). (*Id.* at pp. 355–357, 360.) The FEHA claims were dismissed with prejudice, but the Unruh Act claims were not. (*Id.* at pp. 356–357.) Specifically, while the trial court concluded that the Unruh Act "does not reach employment discrimination claims, and the complaints '[did] not allege sales transactions of the sort that qualify for' " that statute's protection, it granted plaintiffs leave to amend to allege business transactions that the Unruh Act did cover. (*Ibid.*) The trial court also left open the possibility that the writers could plead class claims under the UCL. (*Id.* at p. 360.) Nonetheless, "[t]he writers chose not to replead the Unruh Civil Rights Act claims, and likewise chose not to try to plead class claims under the UCL, instead amending their complaints to state only representative claims under the UCL." (*Ibid.*, fn. omitted.)

The writers filed an immediate appeal of the ruling sustaining the demurrers. The talent agencies argued that the appellate court lacked jurisdiction because "it was not the trial court's order that extinguished their class claims; instead it was the writers' own choice [not to amend their complaint] that 'rang the "death knell" for their class claims.' " (*Alch*, *supra*, 122 Cal.App.4th at p. 360.) The Second District Court of Appeal disagreed and concluded it had jurisdiction under the death knell doctrine. (*Ibid.*) The decision explained that the determinative issue is whether any "viable class claim

---

[2] Williams also contends that we should reject Impax's argument on judicial estoppel grounds, since Impax took the position below that the December 2017 order was not appealable under the death knell doctrine. Judicial estoppel does not apply here, as a court's fundamental jurisdiction " 'cannot be conferred by waiver, consent, or estoppel.' " (*AP-Colton LLC v. Ohaeri* (2015) 240 Cal.App.4th 500, 507.)

6

remains pending in the trial court" after the challenged order. (*Ibid.*) It further explained that "the legal effect of the trial court's order was that no class claims remained, absent some further action by the writers, who chose not to attempt to plead sales transactions under the Unruh Civil Rights Act or class claims under the UCL. In short, the trial court's order disposed of all the class claims plaintiffs wanted to bring, allowing them only to try to plead different class claims which, as it happens, they did not want to bring." (*Id.* at p. 361.) *Alch* refused to "depriv[e] the writers of a death knell appeal in circumstances where all the class claims they choose to assert have been eliminated by the [challenged] order," as "no principle of law requires plaintiffs to attempt to replead claims or to assert additional class claims that might or might not be available." (*Ibid.*) Thus, *Alch* teaches that an order dismissing class allegations, even if entered *with* leave to amend, still sounds the death knell for the class claims. (Accord *Miranda v. Anderson Enterprises, Inc.* (2015) 241 Cal.App.4th 196, 202 [rejecting argument that "the death knell doctrine applies only when the class claims are terminated with prejudice"].)

Williams argues that *Alch* is distinguishable because "the class claims that the [*Alch*] plaintiffs sought to bring were denied *without* leave to amend." She reasons that the writers were given leave to amend the Unruh Act class claims "to allege a different type of claim" based on business transactions, but they were not given leave to amend these claims in a way that would preserve their challenges to discriminatory employment practices, meaning that the class claims the writers chose to bring were, indeed, terminated by the trial court's order. Williams claims that "[h]ere, in comparison, the trial court initially did not demolish any class claim that [she] brought—it instead gave [her] 45 days to add a class representative to bring *additional* claims."

Williams's argument mischaracterizes the effect of the December 2017 order. That order *struck the class allegations*, meaning that they "had already been removed from the case," and Williams was thus "the sole plaintiff in an individual action" at that point. (*Safaie v. Jacuzzi Whirlpool Bath, Inc.* (2011) 192 Cal.App.4th 1160, 1168–1169.) As *Safaie* illustrates, the possibility that dismissed or stricken class allegations might be revived does not change the status of a death knell order. In *Safaie*, the trial court

7

decertified the class, an order the plaintiff unsuccessfully appealed. (*Id.* at pp. 1165–1166.) On remand, the plaintiff unsuccessfully moved to recertify the class based on an intervening change in the law. (*Id.* at pp. 1166–1167.) The Fourth District Court of Appeal concluded that the order denying recertification was not appealable, as its effect "was not to dismiss the actions as to the members of the class . . . but . . . to deny [the plaintiff's] request to insert class allegations back into his individual action. A denial of this request did not serve as a death knell to [the plaintiff's] individual action because the complaint already existed as an individual action." (*Id.* at pp. 1168–1169.) Likewise, the September 2018 order rejected what was effectively a request to insert class allegations back into Williams's individual action.[3]

The December 2017 order's procedural posture and resulting legal effect distinguishes this case from *Aleman v. AirTouch Cellular* (2012) 209 Cal.App.4th 556, one of the primary decisions on which Williams relies. *Aleman* held that the denial without prejudice of the named plaintiffs' motion for class certification, on the basis that they had not shown they were adequate class representatives, was not a death knell order. (*Id.* at pp. 566, 586.) *Aleman* explained that "[b]ecause the denial order was without prejudice, the remaining plaintiffs [were] free to move for class certification again." (*Id.* at p. 586.) Thus, those "plaintiffs' ability to pursue class certification ha[d] not [yet] been terminated," and the order was not appealable. (*Ibid.*) In other words, the order in *Aleman* neither dismissed nor struck the class allegations, which remained to support another potential motion for class certification. In contrast, here the December 2017 order struck the class allegations, and those allegations no longer remained.

Williams also relies on *Farwell v. Sunset Mesa Property Owners Assn., Inc.* (2008) 163 Cal.App.4th 1545, which she characterizes as "dispositive." There, four

---

[3] In any case, the distinction Williams proposes between this case and *Alch* is unworkable. As *Alch* emphasized, a plaintiff chooses which claims to pursue and is not required to do *anything* in response to a trial court's invitation to add or amend class allegations. (See *Alch*, *supra*, 122 Cal.App.4th at p. 361.) An order's current appealability under the death knell doctrine cannot hinge on future actions a plaintiff may or may not take.

plaintiffs appealed from an order sustaining a demurrer to their complaint against a *defendant* class of fellow homeowners in a particular development, on the basis that the named defendants were not adequate representatives of the class. (*Id.* at pp. 1547, 1549.) The demurrer was sustained with leave to amend. (*Id.* at p. 1547.) *Farwell* concluded that the order was not appealable under the death knell doctrine for several reasons, including that it was inappropriate to apply the doctrine "to the death knell of [an] action *as a defendant class action*. . . . [T]he gist of the death knell doctrine is that the denial of class action certification is the *death knell of the action itself*, i.e., that without a class there will not be an action or actions, as is true of cases when the individual plaintiff's recovery is too small to justify pursuing the action. In this case, as inconvenient as separate individual actions against homeowners may be for both plaintiffs and defendants, such actions can nevertheless be filed and pursued." (*Id.* at p. 1552.) Here, of course, we are not concerned with an action against a defendant class, and *Farwell*'s holding that an order sustaining a demurrer with leave to amend was not appealable under the death knell doctrine consequently has little force.

Williams ignores this obvious distinction, focusing instead on one of the other reasons *Farwell* gave for its holding. On appeal, the plaintiffs had proposed for the first time another way in which they could amend their complaint to name adequate class representatives. (*Farwell v. Sunset Mesa Property Owners Assn., Inc.*, *supra*, 163 Cal.App.4th at pp. 1551–1552.) *Farwell* stated, "[I]t may well be that this solution would be acceptable to the [trial] court. If so, the [order sustaining the demurrer] obviously was not the death knell of the class action." (*Id.* at p. 1552.) But the appellate court offered this reason before it made clear that a defendant class action was not the sort of "class action" the doctrine even covers. (See *ibid.*) To the extent the court's statement suggests that an order sustaining a demurrer against a *plaintiff* class action with leave to amend is "not the death knell" of that action, it is dicta, and we decline to follow it over *Alch*'s well-reasoned discussion of the issue.

To summarize the governing principles, an order whose legal effect is to strike the class allegations from a complaint while leaving a plaintiff's individual claims intact

qualifies as a death knell order. Thus, an order sustaining a demurrer to class allegations will generally qualify as a death knell order, *regardless of whether leave to amend is granted to re-allege class claims,* because the order in effect strikes the allegations from the complaint. But an order denying or decertifying a class will generally qualify as a death knell order only if it is entered with prejudice. Such an order entered without prejudice will generally not qualify as a death knell order because the order does not in effect strike the class allegations from the complaint.

Because the December 2017 order was appealable under the death knell doctrine and Williams did not appeal it, it necessarily follows that she is foreclosed from now attacking the dismissal of her class allegations. "California follows a 'one shot' rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited." (*Baycol*, *supra*, 51 Cal.4th at p. 761, fn. 8.) Since, as we have said, death knell orders are immediately appealable, a plaintiff who does not appeal a death knell order is precluded from attacking it in the future. (*Stephen v. Enterprise Rent-A-Car*, *supra*, 235 Cal.App.3d at p. 811.) In other words, "[u]nder any circumstances, a plaintiff will have one, and only one, opportunity to appeal an order that has the legal effect of disposing of all class claims." (*Alch*, *supra*, 122 Cal.App.4th at p. 361.) Even if the September 2018 order were otherwise appealable, at this point Williams can no longer challenge the disposition of the class allegations in the December 2017 order, which is now final.[4]

We also conclude that we do not have jurisdiction to consider Williams's claim related to her failure to obtain discovery of the class list. Williams contends that "the trial court's refusal to allow [her] to bring a motion to compel—and by extension, to make any order whatsoever as to whether to compel Impax to produce the class list—. . . is memorialized in the [September 2018] order." Assuming, without deciding, that this

---

[4] Had Williams identified other class representatives and amended her complaint accordingly, the December 2017 order would have remained a death knell order as to her, but it would not bar the new putative class representatives from appealing future orders that adversely resolved class allegations asserted by them.

10

characterization is correct, we agree with her that this ruling was not a separate, nonappealable "discovery order" and that her notice of appeal is not defective for failing to specify it separately. But she does not argue that the ruling is independently appealable, as opposed to reviewable in the context of our consideration of the ruling on Impax's motion to strike. Thus, because we do not have jurisdiction over the September 2018 order to the extent it struck the first amended complaint's class allegations, we also do not have jurisdiction over it to the extent it effectively denied Williams discovery of the class list.

Finally, Williams asks in the alternative that we construe this appeal as a petition for an extraordinary writ. "An appellate court has discretion to treat a purported appeal from a nonappealable order as a petition for writ of mandate, but that power should be exercised only in unusual circumstances." (*H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1366–1367.) Our state Supreme Court has found circumstances appropriate to justify this course "where requiring the parties to wait for a final judgment might lead to unnecessary trial proceedings, the briefs and record included in substance the necessary elements for a proceeding for a writ of mandate, there was no indication the trial court would appear as a party in a writ proceeding, the appealability of the order was not clear, and all the parties urged the court to decide the issue rather than dismiss the appeal." (*Id.* at p. 1367, discussing *Olson v. Cory* (1983) 35 Cal.3d 390.)

Williams identifies no similar circumstances here. She claims only that writ review is appropriate if we conclude that "an order sustaining a demurrer with leave to amend class claims is immediately appealable," since there "would be conflicting case law on this point." Williams cites other decisions that have granted writ relief in the face of conflicts in the law, but they involved petitioners who sought writ review in the first instance. Thus, those decisions did not involve the issue whether to construe an appeal as a writ petition. In our view, more is required than just a colorable dispute about an order's appealability to create unusual circumstances justifying the exercise of our discretion to treat an appeal as a writ petition.

11

## III.
### DISPOSITION

The appeal is dismissed.  Respondent is awarded its costs on appeal.

_____
Humes, P.J.

WE CONCUR:


_____
Margulies, J.


_____
Banke, J.


*Williams v. Impax Laboratories, Inc*.  A155479

13

Trial Court:

Superior Court of the County of Alameda

Trial Judge:

Hon. Winifred Younge Smith

Counsel for Plaintiff and Appellant:

Edwin Aiwazian, Lawyers for Justice, PC

Jill J. Parker, Lawyers for Justice, PC

Counsel for Defendant and Respondent:

Steven B. Katz, Constangy, Brooks, Smith & Prophete LLP

Barbara I. Antonucci, Constangy, Brooks, Smith & Prophete LLP

Philip J. Smith, Constangy, Brooks, Smith & Prophete LLP

Aaron M. Rutschman, Constangy, Brooks, Smith & Prophete LLP

*Williams v. Impax Laboratories, Inc.* A155479