[L. A. No. 12648. In Bank.—October 11, 1934.]

HARRY T. YOUNG, as Trustee, etc., Appellant, v. THREE FOR ONE OIL ROYALTIES et al., Respondents.

640

W. C. Dalzell for Appellant.

G. C. DeGarmo, W. M. Crane, Glen Behymer, Earle M. Daniels, Ralph J. Brown, Paul W. Forker, Young & Young, Milton K. Young, Wilbur D. Finch, Dryer, Castle

& Richards, Horton & Horton, Joseph K. Horton, Russell A. Barker, Desser & Bokofsky, Knight & Reynolds, A. Noah Borah, Leon K. Jonas and Joseph W. Aidlen, as *Amici Curiae* on Behalf of Appellant.

Philip N. McCaughan, McCaughan & McCaughan, Virgil G. Lewis, Francis D. Adams, Howard Waterman, Walter F. Haas, H. C. Johnston, Robert Clifton, Louis Ferrari, Gerald S. Kerrin, Edmund Nelson, O'Melveny, Tuller & Myers, Louis W. Myers, Freston & Files, Overton, Lyman & Plumb and Ralph E. Lewis for Respondents.

Laurence W. Beilenson, as *Amicus Curiae* on Behalf of Respondents.

CURTIS, J.—The facts of this case are adequately and correctly stated in our former opinion (Cal.) [31 Pac. (2d) 789] as follows:

"The appeal is from a judgment in favor of the defendants in an action brought to recover the amounts paid for certain certificates of beneficial interests in a common-law trust, it being the theory of the complaint that the sales of the interests were in violation of the Corporate Securities Act, and that defendants had falsely and fraudulently represented that they had secured a permit from the corporation commissioner to sell the certificates and had fully complied with the law respecting the sale of securities. Briefly, the facts are as follows: On January 3, 1923, the respondents R. G. Welch, W. J. Dallas and E. J. Boland, as lessees, assigned to the Long Beach National Bank as trustee three oil leases and formed a common-law trust for the purpose of apportioning any production arising from the operation of wells to be drilled upon the property of the lessors, to purchasers of beneficial interests, and to themselves as owners of the interests not sold. The respondent Bank of Italy, by reason of a change of ownership of the Long Beach National Bank, became trustee to succeed the latter on May 14, 1924. The complaint was filed May 20, 1929, by appellant as trustee for Ralph R. Martin, Albert H. Bailey and C. P. Wiand (assignee of E. D. Lindley), who purchased certificates of beneficial interests on the following dates, paying therefor the sums set after their names: February 10, 1923, Ralph R. Martin, one unit, $1,600;

March 1, 1923, Albert H. Bailey, one unit, $1,800, and April 12, 1923, E. D. Lindley, two units, $3,200. The money was paid to R. G. Welch as agent for the Long Beach National Bank as trustee and the other defendants, the bank as trustee issuing to the purchasers the certificates of beneficial ownership. In other words, the action was not commenced until more than six years after the sales were made and the money paid in. Unattacked findings of the court reveal that Martin, Bailey and Lindley each knew at the time of his purchase he was buying an 'interest or unit in the proceeds and avails arising out of said trust known as the "Three for One Oil Royalties"', that during the period when the sales were made the defendants did not have any permit from the corporation commissioner authorizing them, or the trustee, to sell beneficial interests in the trust. Another finding supported by a stipulation of counsel is to the effect that inquiry was made of the corporation commissioner concerning whether a permit for the 'Three for One Oil Royalties' was necessary and the commissioner ruled that it was not necessary. Other findings are in substance that none of the defendants represented that a permit had been issued, or concealed any facts from the purchasers, or practiced any fraud upon any of them. The defendants interposed the plea that the complaint was barred by the statute of limitations and the court concluded that this defense was well grounded."

As the basis for recovery by the appellant, he contends that the certificates of beneficial interests acquired by the original purchasers thereof and now owned by the appellant are void for the reason that the Long Beach National Bank, to whom the trust property had been conveyed, and who, as trustee under said conveyance, issued and sold said beneficial certificates, had no permit from the corporation commissioner, at the several times when said certificates were issued and sold, authorizing the sale or issuance of said certificates, or any of them. The answer to this contention depends upon certain provisions of the Corporate Securities Act which it is conceded controls in such matters, and which expressly prohibit the sale or issuance of securities of the character of those herein involved unless such a permit is issued by the corporation commissioner of the state. These provisions of the act except certain corporations from their requirements, and the ques-

tion presented on this appeal is whether the Long Beach National Bank, in issuing and selling said certificates as trustee of said trust, came within the general provisions of said act or of the aforesaid exceptions.

At the time said certificates were purchased by plaintiff's assignors in the months of February, March and April, 1923, subdivision 3 of section 2 of the Corporate Securities Act read in part as follows:

"The word, 'company' includes all domestic and foreign private corporations, associations, joint stock companies and partnerships of every kind, and also trustees, as hereinafter defined, excepting therefrom.

"(a) All national banking associations and other corporations organized and existing. under and by virtue of the acts of the congress of the United States.

"(b) .        .        .        .        .        .        .        .        .

"(c) All corporations now or thereafter organized under the laws of this state for the purpose of conducting the business of banking within this state and all corporations transacting insurance business within this state.

"(d) .        .        .        .        .        .        .        .        .

"(e) .        .        .        .        .        .        .        .        .,'

Subsection (b) excepts public utilities; subsection (d) excepts building and loan associations and subsection (e) excepts certain nonprofit corporations. We are not particularly concerned with the last named class of corporations. In later subdivisions of said section 2, a trustee is defined as any person or company executing a voluntary trust expressly created by an instrument in writing—with certain exceptions not material to any question herein. By section 3 of said act, it is provided that no company shall sell its securities without first obtaining a permit from the corporation commissioner authorizing such sale. Reducing · these provisions of the act to simple terms, we have company defined to include every domestic or foreign corporation or association of individuals, including trustees, except five specified types of corporations, one of which is national banks, with the prohibition against any company so defined issuing securities without first securing a permit from the corporation commissioner authorizing the sale of such securities. It will thus be noted that in defining companies which are required to secure a permit from the corporation commissioner before issuing securities, national banks are

expressly excepted from said definition. Appellant concedes that national banks when issuing their own securities—that is to say, securities against their own assets—are not subject to the provisions of the act requiring a permit, but he contends that when a national bank issues securities other than its own, that is, as in the present instance, when it acts in the capacity of a trustee in issuing securities of other corporations or individuals, the exception above noted does not apply. On the other hand, the respondents contend that the section of the act is clear and unambiguous, and means just what its plain language imports—that is, that a national bank as such is excepted from the definition of ''company'' and that while acting as such, either in issuing its own securities or as a trustee in issuing those of other persons or corporations, it is not required to secure a permit before taking such action.

It was held in the case of *In re Flesher,* 81 Cal. App. 128 [252 Pac. 1057], in construing the Corporate Securities Act, that it was ''the legislative intent to exclude from the definitive words of the section all corporations subject to some other supervisory power of the state''. Under this construction of the act, national banks were assumed to belong to those classes of corporations excepted from the operation of the act. Appellant and some of the *amici curiae* supporting the position of appellant in an exhaustive argument make the contention that under the laws of the United States as they were in effect at the date of the enactment of the Corporate Securities Act, national banks acting in the capacity of trustees were not under the regulation of any other power. This contention we think cannot be sustained. The present Corporate Securities Act was enacted in 1917, and the provisions with which we are now dealing were in the original act. They were not amended until 1923. They were, therefore, in force at the dates when the securities herein involved were issued. National banks were then subject to federal regulation under a statute enacted in 1913. (38 Stats. at Large, p. 262, U. S. Stats. 1913, chap. 6, sec. 11.) By this statute the Federal Reserve Board is given power, ''To grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee, executor, administrator, or registrar of stocks and bonds under

such rules and regulations as the said board may prescribe." It may be true that at the date of the passage of the Corporate Securities Act no detailed set of rules and regulations had been prescribed by the Federal Reserve Board in pursuance of the power given by said statute concerning or regulating the sale or issuance of securities by a national bank acting in the capacity of a trustee, yet by this statute national banks in such transactions were made subject to the regulation of the Federal Reserve Board. When, therefore, the legislature in 1917 enacted the Corporate Securities Act, and excepted from its terms, national banks, it may well have considered, and we think it did so consider, that national banks were subject to federal control and regulation, and for that reason should be excluded from the requirements of the legislative act then under consideration.

Respondents call our attention to the amendment of the Corporate Securities Act in 1929 (Stats. 1929, pp. 1251, 1253) as indicating a belief by the legislature at that time that national banks when acting as trustees were not subject to the Corporate Securities Act prior to said amendment. By the amendment in 1929, national banks were expressly made subject to the Corporate Securities Act except when issuing their own securities, or to express it more accurately, the provisions of the act as amended in 1929 requiring a permit shall not apply to any security issued by and representing an interest in or a direct obligation of a national bank. It is conceded that after this amendment a national bank when acting as trustee in the sale of securities not its own is required to have a permit from the corporation commissioner to issue such securities. Respondents contend that such amendment would have been entirely unnecessary and useless had the act as originally enacted required such a permit from a national bank when issuing securities as a trustee for other parties. Appellant's reply to this contention of respondents is that the amendment of 1929 was enacted simply for the purpose of interpreting the act or clarifying any uncertainty or ambiguity that might exist in the original draft of the act. The history of the act since its enactment in 1917 does not in our opinion bear out appellant's contention. The Corporate Securities Act as first adopted excepted both state and national banks from its

provisions requiring corporations before issuing certificates to secure a permit from the corporation commissioner. In 1923, but after the sale of the certificates now owned by appellant, the legislature amended said act so as to except state banks from the terms of said act only ''when such corporations are issuing securities of their own issue against their own assets''. (Stats. 1923, p. 87.) The terms of the act in so far as they applied to national banks were left as originally enacted. In 1929, however, the act was amended as above indicated. Had the legislature by these amendments intended simply to clarify the provisions of the act relative to state and national banks, it seems most reasonable to suppose that it would have in 1923, when it amended the act as it affected state banks, also made the same amendment of the act as it affected national banks. The same uncertainty or ambiguity, if any such existed, was present in each provision of the act affecting the two classes of banks. Why clear up one uncertainty and leave the other, particularly so when they both are found in the same section of the act and deal with similar subjects? Evidently the legislature had some other purpose than merely clarifying the provision of the act relating to state banks by its amendment in 1923. It evidently intended to place upon state banks a requirement not theretofore imposed upon them by the Corporate Securities Act. So when the legislature in 1929 placed practically the same restriction upon national banks that it had previously imposed upon state banks, we think the conclusion is irresistible that it was done with the same intent as that which actuated it in amending the act in 1923 relative to state banks. In each case there was in our opinion an essential change in the terms of the act as it applied respectively to these two classes of corporations. ■ The rule of interpretation in such cases has been stated as follows: ''Ordinarily, it would seem that any essential change in the phraseology of a statutory provision would indicate an intention on the part of the legislature to change the meaning of such provision rather than to interpret it.'' (23 Cal. Jur. 778.) We are, therefore, of the opinion that the amendment of the Corporate Securities Act in 1929 in the respect above indicated was not for the purpose of interpreting it, but to change the meaning of the act as claimed by respondents.

A large part of the briefs both of the parties hereto and of the *amici curiae* has been devoted to the question of the constitutionality of those sections of the Corporate Securities Act herein involved, governing the issuance of securities by national and state banks without a permit from the corporation commissioner. These arguments are evidently predicated upon the misapprehension of the law as it existed at the respective dates when the certificates now owned by the plaintiff were acquired by the original purchasers. The contention is made with much earnestness that if the provision as to national banks is construed so as to exempt a national bank from the duty of securing a permit when issuing certificates as a trustee, such a preference is given national banks over state banks as to render the act unconstitutional in that respect. This question does not arise in this proceeding as the Corporate Securities Act in force at the time said securities were purchased applied equally to each of these two classes of banks, as will readily be seen from the provisions of said act hereinbefore set forth. After said certificates were purchased, as we have stated, the act was amended so as to limit the right of state banks when operating without a permit from the corporation commissioner to the issuance of their own securities, leaving the provisions as to national banks the same as originally enacted. But with the provisions of the act in force after such amendment we are not concerned as the rights of the parties herein are governed by the terms of the act before such amendment.

A second contention is made by appellant, and that is, that the trial court erred in finding in defendants' favor on their plea of the statute of limitations. As we are of the opinion that the certificates now held by the plaintiff were legally issued for the reason that no permit was required of the bank at the time of their issuance, the question as to the bar of the statute of limitations is not necessary to the decision herein. Nevertheless, we are urged by the respondents and a number of *amici curiae* appearing herein to decide this question as a large number of cases involving state trust companies are now pending in the courts awaiting a decision of this question. Notwithstanding this request, we have decided to leave this question for future

action. We have reached this conclusion for the reason that any decision that we might render herein, if adverse to the respondents, would be *dictum* pure and simple. It hardly seems fair that we should pass upon this important question and possibly prejudice the rights of litigants in other pending actions except when the conditions are equal and the decision binding upon all parties to the litigation. We therefore express no opinion upon this question and leave the same to be determined in some future · proceeding in which all parties therein will be upon equal footing.

Lastly, the appellant complains of the denial by the trial court of his motion to amend his complaint to conform to the proof. It has repeatedly been held that such matters are largely in the discretion of the trial court and its determination thereof will not be set aside unless it clearly appears that there has been an abuse of such discretion. No such showing has been made by appellant in respect to the trial court's denial of his said motion.

The judgment is affirmed.

Thompson, J., Preston, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.