[Nos. B169675, B172164, B173446. Second Dist., Div. One. Jan. 13, 2005.]

ANTHONY ESTRADA et al., Plaintiffs and Appellants, v.
RPS, INC., Defendant and Respondent.

**COUNSEL**

Lynn Rossman Faris, Beth Ann Ross, Philip C. Monrad, Leonard Carder; Patten, Faith & Sandford, Jules Sandford and Lorraine Grindstaff for Plaintiffs and Appellants.

Seyfarth Shaw, James M. Nelson, Alfred L. Sanderson and Diana L. Rachal for Defendant and Respondent.

## OPINION

**VOGEL, J.—** ■ This is a class action in which the class was conditionally certified, subject to responses to questionnaires approved by the court and sent to the tentatively certified class. Some potential members did not respond at all, others provided inadequate responses, and all of those people were dismissed from this action. Meanwhile, the named plaintiffs and those who did respond to the questionnaires proceeded to trial, established liability, and are now in the midst of the damages phase of their bifurcated trial. At the same time, the named plaintiffs, purportedly acting on behalf of the dismissed class members, have appealed from the dismissal orders. There are two ways to view the dismissal orders—as orders pertaining to class certification, or as discovery sanction orders. If they are class certification orders, the named plaintiffs have standing to appeal but the orders are not appealable; if the dismissals are discovery sanctions, the orders are appealable but the named plaintiffs have no standing. Because we view all of the dismissal orders as part and parcel of the certification process, we conclude the named plaintiffs have standing to appeal but the orders are not appealable. We therefore dismiss these consolidated appeals as premature.

## FACTS

### A.

Anthony Estrada, a former driver for RPS, Inc., sued RPS for alleged unfair business practices (Bus. & Prof. Code, § 17200 et seq.), alleging—on behalf of himself and all persons who worked as contractors for RPS under the terms of the company's "Pick-Up and Delivery Contractor Operating Agreement"—that RPS unlawfully classified its pick-up and delivery drivers as "independent contractors" rather than "employees" and, as a result, failed to reimburse them for employment-related expenses.[1] Estrada sought reimbursement (Lab. Code, § 2802), restitution, an accounting, and injunctive and declaratory relief.

### B.

In November 2000, the trial court (Commissioner Bruce E. Mitchell) *tentatively* and *conditionally* granted Estrada's motion for class certification,

---

[1] A few housekeeping notes: (1) Two other named plaintiffs, Jeffrey Morgan and Harvey Roberts, are included in our references to Estrada. (2) RPS (by corporate name change) is now known as FedEx Ground Package Systems, Inc. (3) The original complaint was filed on May 11, 1999, the first amended complaint (the operative pleading) in June 2000. (4) Our references to Class Counsel are to the lawyers and law firms representing Estrada and the Plaintiff Class.

but further briefing and several hearings occurred before the class was defined and the notice to class members approved.

In May 2001, the class was tentatively defined to include (1) contractors (2) who actually drove a truck (3) in a single service area (4) during the class period. When RPS explained that it had a list of contractors but no records confirming which contractors actually drove a truck (as opposed to those who hired others to drive), Class Counsel proposed that notice be sent to an *admittedly over-inclusive group* of contractors who worked a single service area during the class period. The court accepted that approach, subject to the use of a questionnaire or other post-certification discovery mechanism to determine the identity of the contractors who also drove.

In July, the court added an additional qualifier—that the contractors drove "full-time (excluding time off for vacations and illness)." In response to RPS's request for a more specific definition of "full-time," the court reiterated its ruling that "this certification is going to be conditional," that "post-certification discovery" would be used "to winnow . . . out" contractors who were not "full time" drivers, and that RPS could move to decertify the class or dismiss those who did not qualify. On August 1, using RPS's list of contractors who worked a single service area during the class period, Class Counsel (while admitting this group would be overly inclusive, and conceding there would have to be "some winnowing" by the use of a questionnaire) insisted the list would provide a "reasonably accurate rough cut list" of class members.

On August 2, the trial court certified Estrada's Labor Code reimbursement claim for class treatment, finding there were common issues (whether class members were RPS "employees," and whether various expenses were "necessarily incurred"), and that class certification was not rendered inappropriate simply because "each class member [would] ultimately have to prove the amount of [his or her own] expenses."[2]

## C.

On the same day the class was certified, the trial court signed and filed the notice to be given to the "plaintiff class of pendency of class action and

---

[2] The class, as certified, is defined this way: "Each Pick Up and Delivery Contractor who at any time between May 11, 1996 and July 26, 2001 performed services for RPS . . . as a Pick-Up and Delivery Contractor driving full-time (meaning exclusive of time off for vacation and/or illnesses) in a single service area dispatched from a California-based terminal pursuant to the terms of the Pick Up and Delivery Contractor Operating Agreement." This definition is followed by five excluded categories of contractors, the details of which are not relevant to these appeals.

exclusion rights." The notice included the class definition as stated in the certification order (fn. 2, *ante*) and then advised the potential class members of their "three choices" if they wanted to protect their legal rights:

"**a. You May Do Nothing**: *If you do nothing, you will automatically be included in the class action.* You will not be entitled to bring a separate lawsuit and you will be bound by the final judgment in this class action whether favorable or unfavorable. If judgment is entered in favor of the plaintiff class and reimbursement ordered, you will be entitled to share in the proceeds of that judgment less attorneys' fees and costs as explained [elsewhere in the notice]. You will be represented by the attorneys representing the class. *You will be asked to document any expenses for which you claim reimbursement.* California law prohibits retaliation by an employer against any person who participates in or assists in these kinds of lawsuits.

"**b. You May Hire Your Own Attorney**: You may retain your own lawyer at your own expense and seek to intervene in the action as a named plaintiff to assert your own claims.

"**c. You May Opt Out of the Class Action**: If you do not want to participate in this class action, you may opt out of the class. If you opt out, you will not be bound by the judgment in this lawsuit, and you will keep, to the extent allowed by law, whatever claims you may have against RPS and/or its successors. To opt out, you must sign the Request for Exclusion from Class form that is enclosed with this Notice and return it to [a stated address] no later than [a specified date]." (Italics added.)

RPS gave Class Counsel a list of the contractors (names, addresses, telephone numbers, and social security numbers) and Class Counsel sent the approved notice to everyone on that list (plus some additional contractors included on a supplemental list provided by RPS). After the opt-out period expired, the trial court accepted a certified list of about 700 class members.

## D.

Because of the undefined "full-time" qualifier, the parties were unable to agree "on a final class list and procedures for further class management," and RPS sought approval of a proposed questionnaire to be sent to the class members to determine "how often each contractor hired others to drive" as opposed to driving personally, and to inquire (and request documents) about the amount of each contractor's actual expenses. At a hearing held in February 2002, the trial court divided the proposed questions into two sets, Questionnaire One (Q1) and Questionnaire Two (Q2). Although Class Counsel "did not acquiesce" in the decision to send the questionnaires, they were

active participants in drafting and refining the questions into "a more user-friendly format" (as the trial court described the ultimate questions). Everyone understood the questionnaires were, in substance if not form, interrogatories.

### E.

During March, April and May 2002, Class Counsel sent Q1 to all 700 class members. A cover letter from Class Counsel explained the questionnaire this way:

"In 1999, three former RPS drivers filed a class action lawsuit against RPS . . . . You should have received a notice about the class action in August or September, 2001. *There are over 550 drivers and former drivers on the current list of class members, and you are one of them.* We represent the three drivers who filed the lawsuit, as well as those who have chosen to remain in the class action.

"In all lawsuits, the parties gather information about the issues. One of the current issues in this case is membership in the class. The Court has ordered that a questionnaire be sent to all Class Members. That questionnaire is enclosed. We are sending 50 of these out each week until we get through the whole class of 550. *We anticipate that you may have questions about this questionnaire, and we are here to answer them and to assist you in completing it. Please do not hesitate to call us. It is important that we receive filled out questionnaires back from all Class Members.*

"Your questionnaire is due back to us no later than [a specified date]. Please fill it out, put it in the enclosed envelope and send it back. *Your complete response will assist in demonstrating that you are in the class and therefore potentially entitled to reimbursement of certain expenses incurred while driving for RPS* . . . . WE ENCOURAGE YOU TO CALL US TO ASK QUESTIONS ABOUT THIS QUESTIONNAIRE, TO DISCUSS THE LAWSUIT, TO GIVE US INFORMATION THAT YOU THINK MAY HELP IN THE LAWSUIT, OR FOR ANY OTHER REASON." (Italics added.)

The questionnaire itself bears the caption of the case and is plainly a court document. It begins with a "Notice to Class Members" that includes the following warnings:

"Parties to litigation generally are required to provide information related to their legal claims. In this case, RPS . . . seeks information regarding the legal claim . . . that its current and former contractors should have been classified as employees and should be paid for certain expenses that they

necessarily incurred. *Since you may be eligible to recover money through the lawsuit, and since you have not opted out of the class, you must provide information relating to your own circumstances.* This questionnaire will be followed by one or more additional requests for information.

"The Los Angeles Superior Court has reviewed and approved the attached questionnaire. Pursuant to section 2030 of the Code of Civil Procedure, you must provide a complete and signed response to this questionnaire on or before [a specified date]. . . . If you have questions, you may consult with the [named lawyers] who represent the class . . . . You may also consult with your own attorney. . . ." (Italics added.)

### F.   The First Dismissal Order

By June, only 140 class members had responded. Although multiple extensions of time to respond were granted, the number of responding class members had increased to only 240 by October. RPS moved to decertify the class, but the trial court denied the motion, telling RPS it could move to exclude from the class those contractors who had failed or refused to return Q1. A further extension of time to respond was granted.

By February 2003 (11 months after Q1 was first served), only 263 class members had responded, and RPS renewed its motion to dismiss all nonresponding class members. Class Counsel, in turn, moved for a protective order to prevent any dismissals and to prevent RPS from serving Q2. In July, the trial court denied Class Counsel's motion for a protective order, noted Class Counsel's admission that they did "not possess the information sought by the questionnaires, and . . . [could] not readily obtain this information from their class clients," and found it "ironic that Plaintiffs [were then] contend[ing] that the very discovery device which permitted their difficult class action to be certified" should be disallowed.

At the same hearing, the trial court granted RPS's motion to dismiss four categories of nonresponding class members: (1) those 14 contractors whose class notices were returned as undeliverable, and whose Q1's were returned as undeliverable or delivery was unconfirmed; (2) those 72 contractors whose class notices were not returned but whose Q1's were returned as undeliverable and who had not contacted Class Counsel; (3) those 239 contractors whose class notices and Q1's were not returned as undeliverable but as to whom Class Counsel was unable to confirm receipt or otherwise contact; and (4) those 114 contractors whose class notices were not undeliverable and who had confirmed to Class Counsel their receipt of Q1 but who had failed to return a completed questionnaire.

With regard to the first two categories, the court deleted their names from the list of class members (but did not dismiss their claims), without prejudice to their pursuit of their own actions and (as the court put it) leaving them "in no better and no worse position than had they never appeared on the original class list." With regard to the third category, the court dismissed their claims without prejudice (out of "an excess of caution, because we do not know the individual circumstances as to why each person [in this group] failed to respond") for failing to respond to Q1 after being ordered to do so. (Code Civ. Proc., §§ 2030, subd. (l), 2023.) With regard to the fourth category, the court dismissed the claims with prejudice based on the contractors' failure to respond.[3]

### G. The Second Dismissal Order

By late July, Class Counsel had served Q2 on the class members and had received 234 responses. In August, RPS moved to dismiss the class members who had not responded, and (after a further extension of time) the motion was granted. The trial court emphasized that it had approved the questionnaire, and that the information sought was critical because it went "directly to whether [the contractors'] circumstances . . . place[d] them within . . . the class definition [or were] susceptible to common proof on the independent contractor issues . . . ." An order was entered dismissing 27 class members who failed to respond to Q2.

### H. The Third Dismissal Order

Question 10 of Q1 asked the class members to state "the number of business days during each year, starting May 11, 1995 [and ending in 2002], when you were a pick-up and delivery contractor for RPS, but did not drive personally (for whatever reason)." Fifteen class members either did not respond to this question or responded "I don't know" or "I don't recall" (or words to that effect), and RPS moved to dismiss those contractors on the ground that "it [would] never be possible to determine whether they [met] the class definition [working 'full time'] . . . ." The motion was granted in part in December, at which time nine contractors were dismissed with prejudice (the original or supplemental responses from the other six were accepted as sufficient).

---

[3] With regard to categories three and four, the trial court relied on its inherent equitable authority to modify or refine the class after certification, and "in particular to remove . . . those who indicate their unwillingness to meaningfully participate." The court also noted that the lack of responses deprived RPS of information it needed to defend itself, "the obtaining of which was a condition for the Court's decision to grant class certification."

### I. The Fourth Dismissal Order

With the court's permission, RPS had propounded requests for the production of documents (related to proof of business expenses) to the class members. By January 2004, after several extensions were granted, 17 class members had failed to produce the requested documents, and those 17 contractors were dismissed with prejudice.

### J.

By February 2004, by which time the class was reduced to 207 members, Class Counsel had filed four separate notices of appeal challenging the four dismissal orders on behalf of the dismissed class members (and we later consolidated all four appeals).[4]

While the appeals were pending, the cause proceeded to trial in two phases.[5] On July 26, the trial court (Hon. Howard J. Schwab) issued his statement of decision, finding in Phase One that the 207 qualified class members were employees of RPS, not independent contractors. The court then proceeded to Phase Two, determined (on September 8) which categories of expenses were compensable, then (on October 13) ordered the appointment of a referee (Hon. William J. Cahill, retired) to take evidence, perform an accounting, and report back to the trial court. As of this writing, Phase Two has not been completed.

### DISCUSSION

Estrada, on behalf of the dismissed class members, contends the questionnaires should never have been authorized and the dismissals should not have been entered. In response, RPS challenges our jurisdiction on the related grounds that the dismissed class members lack standing to appeal *and* the challenged orders are not appealable. We agree with RPS in part, and explain that, in the context of this case, our characterization of the challenged dismissals—as class certification orders on the one hand, or discovery sanction orders on the other—determines both standing and appealability.

---

[4] On August 20, 2003, Estrada, "on behalf of" 440 listed class members, filed a notice of appeal from the first dismissal order. On December 15, 2003, Estrada, "on behalf of" 27 listed class members, filed a notice of appeal from the second dismissal order. On February 17, 2004, Estrada, "on behalf of" six listed class members, filed a notice of appeal from the third dismissal order and, "on behalf of" 17 listed class members, filed a separate notice of appeal from the fourth dismissal order.

[5] The information in this paragraph comes from Class Counsel's requests for judicial notice (filed on August 2 and October 20, 2004), and RPS's request for judicial notice (filed on September 17, 2004), all of which requests are granted. (Evid. Code, §§ 451, subd. (a), 453.)

## A.

If (as Estrada contends for purposes of appealability, and as RPS contends for purposes of standing) the dismissals are viewed as *discovery sanction orders* (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2004) ¶ 14:137.3, p. 14-64), the dismissals are appealable because they terminated this litigation insofar as the dismissed class members are concerned (Code Civ. Proc., §§ 581d, 904.1; *Cornwall v. Santa Monica Dairy Co.* (1977) 66 Cal.App.3d 250 [135 Cal.Rptr. 761]; *Topa Ins. Co. v. Fireman's Fund Ins. Companies* (1995) 39 Cal.App.4th 1331, 1336 [46 Cal.Rptr.2d 516]), *but Estrada has no standing to pursue these appeals on behalf of the dismissed class members.* (Code Civ. Proc., § 663; *Eggert v. Pac. States S. & L. Co.* (1942) 20 Cal.2d 199 [124 P.2d 815]; *Rebney v. Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1131–1132 [269 Cal.Rptr. 844].)

As explained in *Rebney v. Wells Fargo Bank, supra,* 220 Cal.App.3d 1117 (where the named plaintiff purported to assert the rights of nonparties in objecting to a class settlement), appeals may be taken only by *aggrieved parties* and a party cannot assert error that injuriously affected only nonappealing coparties. (*Id.* at p. 1128.) The court rejected a claim that the named plaintiff had standing as "guardian" of the class members, holding that the "scope of appellate review . . . is never defined by the parameters of trial court jurisdiction, but is instead limited by specialized jurisdictional principles that are unique to appellate litigation. The requirement of standing to appeal is one of those principles, and because it is jurisdictional [citations] it imposes absolute limitations on the appellate court's guardian role." (*Id.* at p. 1132.)

As *Rebney* also explains, class members who are themselves aggrieved by trial court errors may, on appeal, assert those errors on behalf of the entire class—but the appellants must show they were, in fact, harmed by the errors asserted. (*Rebney v. Wells Fargo Bank, supra,* 220 Cal.App.3d at p. 1132.) Estrada, who has proceeded to trial on the merits of his claim, has not shown (and could not now show) that he is aggrieved by the dismissal of the nonresponding class members, and he thus has no standing to pursue these appeals. Were we to decide the case on this basis, it would mean the dismissed parties' rights, whatever they might be, were forever concluded.

## B.

If (as Estrada contends for purposes of standing, and RPS contends for purposes of appealability) the dismissals pertain to *class certification*, the named plaintiffs have standing to appeal on behalf of the dismissed class members (Code Civ. Proc., § 902; *Zeidman v. J. Ray McDermott & Co., Inc.*

(1981) 651 F.2d 1030, 1042–1043), *but the orders are not appealable.* (*Shelley v. City of Los Angeles* (1995) 36 Cal.App.4th 692, 695–697 [42 Cal.Rptr.2d 529]; *General Motors Corp. v. Superior Court* (1988) 199 Cal.App.3d 247, 250–252 [244 Cal.Rptr. 776]; *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 806–807 [94 Cal.Rptr. 796, 484 P.2d 964]; *Green v. Obledo* (1981) 29 Cal.3d 126, 149, fn. 18 [172 Cal.Rptr. 206, 624 P.2d 256]; Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2003) ¶¶ 2:39 to 2:39.3, pp. 2-23 to 2-24.)

■ As Division Four of our court explained in *Shelley v. City of Los Angeles, supra,* 36 Cal.App.4th at pages 695–697, an order certifying a class is subject to modification at any time, and is appealable after final judgment. Because the propriety of an order granting class certification but limiting or restricting the class can be fully reviewed on appeal from a final judgment, the nonappealability of such an order " 'does not have what has come to be known as the "death knell" effect of making further proceedings in the action impractical because of denial of class action status.' " (*Id.* at p. 696, quoting *General Motors Corp. v. Superior Court, supra,* 199 Cal.App.3d at p. 252.)

Quite obviously, the dismissal orders entered in this case had no "death knell" effect—as evidenced by the fact that the 207 qualified class members have completed the first phase of trial and are currently in the midst of litigating their damage claims. If viewed as class certification limitation orders, the four dismissal orders are plainly not appealable.

## C.

Given his way, Estrada would have us rely on the discovery sanction cases to make the orders appealable, and on the class certification cases to give him standing to assert the rights of the dismissed class members. Conversely, RPS would have us rely on the discovery sanction cases to defeat Estrada's standing, and on the class certification cases to make the orders non-appealable. For our part, we recognize that foolish consistency can sometimes be the hobgoblin of little minds but conclude that inconsistency in this context is more foolish than wise. (With apologies to Ralph Waldo Emerson, Essays: First Series (1841) *Self-Reliance.*) Since the trial court at all times treated the certification process as conditional and dependent upon the responses and documents received to the questionnaires, and since the parties fully understood and accepted this approach, it is plain that the dismissal orders were part and parcel of the class certification process and, as such, not appealable.

## DISPOSITION

The appeals are dismissed as premature. The parties are to pay their own costs of appeal, subject to reallocation in the discretion of the trial court at the conclusion of this litigation.

Spencer, P. J., concurred.

**MALLANO, J.,** Concurring.—I agree with the majority opinion that the consolidated appeals should be dismissed because the challenged orders dismissing certain class members are class certification orders and, therefore, not appealable. And I embrace the majority opinion's analysis and reasoning on that point.

Given this holding, we need not decide whether Estrada would have had standing to pursue these appeals on behalf of the dismissed class members if we had viewed the challenged dismissal orders as discovery sanction orders. Because I would prefer not to decide that issue in dicta but to leave it for another day (see *Young v. Three for One Oil Royalties* (1934) 1 Cal.2d 639, 647–648 [36 P.2d 1065]), I do not join in part A of the Discussion portion of the majority opinion.