[No. D055896. Fourth Dist., Div. One. Jan. 25, 2011.]

SHAHROKH DOCTOR SAFAIE, Plaintiff and Appellant, v.
JACUZZI WHIRLPOOL BATH, INC., et al., Defendants and Respondents.

**COUNSEL**

Finkelstein & Krinsk, Howard D. Finkelstein, Jeffrey R. Krinsk, Mark L. Knutson; Law Offices of Thomas Grady and Thomas Grady for Plaintiff and Appellant.

Allen Matkins Leck Gamble Mallory & Natsis and George J. Berger for Defendants and Respondents.

## OPINION

**HALLER, Acting P. J.**—Shahrokh Doctor Safaie appeals from the trial court's order denying his motion to recertify a class of individuals who purchased whirlpool bathtubs from defendants Jacuzzi Whirlpool Bath, Inc., and Jacuzzi, Inc. (collectively Jacuzzi). Although the order denying recertification is not appealable, we shall exercise our discretion to treat the appeal as a writ petition. In so doing, we determine the court did not err in denying Safaie's motion. The trial court's prior June 2007 ruling decertifying the class, affirmed on appeal in November 2008, barred Safaie from a second opportunity to seek class certification.

## FACTUAL AND PROCEDURAL SUMMARY[1]

In September 2004, Safaie filed a class action complaint against Jacuzzi alleging Jacuzzi made representations in its brochures, marketing materials, and advertisements that certain models of its whirlpool bathtubs had two- or three-horsepower motors, when in fact the tubs had less horsepower. Safaie alleged the misrepresentations constituted fraud and a breach of warranty and violated several consumer protection statutes, including the unfair competition law and the false advertising law.[2] (Bus. & Prof. Code, §§ 17200 et seq., 17500 et seq.) Safaie sought restitution and injunctive relief on behalf of himself and a class of consumers who also purchased the bathtubs.

Two months later, in November 2004, the voters adopted Proposition 64, which altered the standing rules applicable to UCL claims. (See *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228 [46 Cal.Rptr.3d 57, 138 P.3d 207] (*Mervyn's*).) Before Proposition 64, any person could file a UCL lawsuit on behalf of the general public even if the person had not suffered any injury. (39 Cal.4th at p. 228.) Proposition 64 amended the UCL to require that a private plaintiff must have personally incurred injury to have standing to file the lawsuit. (39 Cal.4th at pp. 227–228.)

Eight months later, in July 2005, Safaie moved for class certification. Jacuzzi opposed the motion, contending, inter alia, that the issue of whether a consumer relied on and suffered loss from the horsepower rating was too

---

[1] The underlying facts are detailed in our prior unpublished decision, *Safaie v. Jacuzzi Whirlpool Bath, Inc.* (Nov. 12, 2008, D051511) (*Safaie I*). We discuss only those facts necessary to resolving the issues before us.

[2] For purposes of this opinion, we refer collectively to these unfair competition and false advertising laws as the UCL.

individualized to permit class treatment. In October 2005, the trial court rejected these arguments and granted Safaie's request for class certification. The court certified a nationwide class for the UCL and express warranty causes of action and a California-resident class on all other causes of action. In its class certification order, the court stated its ruling was tentative and could be modified at any time before trial.

During these class certification proceedings, the court and parties extensively discussed the passage of Proposition 64, including the existence of unsettled issues regarding the proper interpretation of the amended UCL. In July 2006, the California Supreme Court held Proposition 64 should be applied to pending cases. (*Mervyn's, supra,* 39 Cal.4th at p. 227.)

Three months later, in September 2006, Jacuzzi moved to decertify the class, arguing class certification was not appropriate because the issues of reliance, causation, and damages were too individualized. To refute this contention, Safaie argued that reliance could be shown based on an inference of common reliance by class members. Safaie submitted numerous supporting evidentiary items, including documents depicting the manner in which Jacuzzi presented the horsepower statement to the public.

While Jacuzzi's decertification motion was pending, in November 2006, the California Supreme Court granted review of two decisions, each of which presented the issue whether the UCL, as amended by Proposition 64, requires all class members to have suffered injury in fact and to have actually relied on the defendant's misrepresentation. (See *In re Tobacco II Cases* (2009) 46 Cal.4th 298 [93 Cal.Rptr.3d 559, 207 P.3d 20] (*Tobacco II*); *Pfizer Inc. v. Superior Court* (2010) 182 Cal.App.4th 622 [105 Cal.Rptr.3d 795].)

In June 2007, the trial court granted Jacuzzi's decertification motion based on its conclusion that individual issues of fact predominated over common issues. In its written order, the trial court explained its reasoning: "The class definition does not take into account the reliance-causation and damages elements that are a required part of every claim by each and every class member. In fact, the class definition demonstrates variations in reliance-causation and damages among the class members. In this regard, the class definition includes many of those who bought defendant's whirlpool bath for reasons other than the advertisement horsepower number, and not as a result of any allegedly overstated horsepower number. Moreover, the class includes many of those who did not incur any loss, fee, or other injury in fact as a result of an allegedly overstated horsepower number. [¶] . . . [¶] Essentially,

individual issues of fact (reliance-causation and damages) . . . predominate."
The trial court also ruled the case was not amenable to nationwide (as
opposed to statewide) class certification.

In August 2007, Safaie appealed from this order decertifying the class. In
November 2008, this court affirmed the order. (*Safaie I, supra,* D051511.) We
concluded the record supported the trial court's finding that class certification
on each of the claims (fraud, breach of warranty, and UCL) was not
appropriate because individual issues predominated on the elements of reli-
ance, causation, and injury. With respect to the UCL causes of action, we
recognized the split in authority on the issue whether reliance is a required
element of a UCL claim for absent class members after Proposition 64, and
that the *Tobacco II* decision was pending before the California Supreme
Court pertaining to this and other issues. (*Safaie I, supra,* D051511.) But we
found our conclusion was justified under both pre- and post-Proposition 64
standards, emphasizing there was no evidentiary showing the horsepower
rating was material to a majority of the class. (*Safaie I, supra,* D051511.) We
also rejected Safaie's argument that the court had no authority to change its
prior interim ruling *granting* certification. (*Ibid.*)

Although the *Tobacco II* decision had been fully briefed and was pending
in the California Supreme Court when we filed the decision (and the high
court had granted and held three additional petitions for review raising the
same issues), Safaie did not file a petition for review in his case. Thus, on
January 12, 2009, we issued the remittitur.

Four months later, in May 2009, the California Supreme Court filed the
*Tobacco II* decision, in which the court held that under Proposition 64 a
named class representative alleging fraudulent misrepresentation under the
UCL must establish reliance, causation, and injury, but this showing is not
required for absent class members. (See *Tobacco II, supra,* 46 Cal.4th at
pp. 312–329.) Interpreting the UCL as amended by Proposition 64, the high
court reaffirmed that a class plaintiff must establish the statutory requirements
for a class action, but stated that "relief under the UCL is available [for the
absent class members] without individualized proof of deception, reliance and
injury." (46 Cal.4th at p. 320.)

One month later, the trial court held a status conference in Safaie's case.
Because the class allegations had been dismissed in the earlier decertification
order, and this order was affirmed on appeal, the sole matter before the trial
court was Safaie's individual action against Jacuzzi. However, in his status

conference statement, Safaie noted his intention to file a "motion for recertification" based on the *Tobacco II* decision and to pursue discovery on classwide issues. Jacuzzi objected that the court had no authority to revisit the class certification issue. The court requested that the parties brief the issues.

Thereafter, in July 2009, Safaie formally moved for class certification on his UCL claims, arguing that, under *Tobacco II*, a class action was appropriate based on the evidence showing Jacuzzi's common course of wrongful conduct in connection with the marketing and sale of its whirlpool baths. Although Safaie relied on the same factual record that was presented in his prior motion, he argued the *Safaie I* decision did not bar his motion because of the intervening change of law exception to the law of the case doctrine. In opposing the motion, Jacuzzi contended the court had no jurisdiction to reopen the class certification issue after the decertification order was affirmed on appeal. Jacuzzi also argued the law of the case doctrine barred the motion and the proposed class was not viable even assuming the court could reach the issues on their merits.

After a hearing, the trial court denied the motion. Citing *Stephen v. Enterprise Rent-A-Car* (1991) 235 Cal.App.3d 806 [1 Cal.Rptr.2d 130] (*Stephen*), the court found Safaie was barred from renewing his class certification motion after the prior decertification order was affirmed on appeal. The trial court additionally found the asserted intervening law exception to the law of the case doctrine was inapplicable because the *Tobacco II* decision was filed after the remittitur was issued.

## DISCUSSION

### I. *Appealability*

■     Generally, only final judgments may be appealed. (See *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697 [107 Cal.Rptr.2d 149, 23 P.3d 43] (*Griset*).) This rule is a "fundamental principle of appellate practice that prohibits review of intermediate rulings by appeal until final resolution of the case." (*Ibid.*) The policy underlying this rule is to avoid piecemeal disposition of an action. (*Ibid.*) "The one final judgment rule is based on the theory that piecemeal appeals are oppressive and costly, and that optimal appellate review is achieved by allowing appeals only after the entire action is resolved in the trial court." (*Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 645 [4 Cal.Rptr.2d 689].)

█ Where these underlying policies are not implicated, the Legislature and the courts have recognized certain exceptions to the one final judgment rule. (See Code Civ. Proc., § 904.1; *Conservatorship of Rich* (1996) 46 Cal.App.4th 1233, 1235 [54 Cal.Rptr.2d 459].) Of particular relevance here, the courts hold certain orders are final for appeal purposes if the order has the practical effect of disposing of the action between particular parties, thus precluding the possibility of multiple appeals between the same parties. (See *Justus v. Atchison* (1977) 19 Cal.3d 564, 568 [139 Cal.Rptr. 97, 565 P.2d 122], disapproved on another ground in *Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 171 [216 Cal.Rptr. 661, 703 P.2d 1].) Courts also hold certain orders appealable that effectively (but not technically) end the case because they serve as a "death knell" to the action, constituting a final order in practical terms. (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699 [63 Cal.Rptr. 724, 433 P.2d 732].)

An order denying class certification or decertifying a class is appealable because it falls into both of these categories. (See *Daar v. Yellow Cab Co., supra,* 67 Cal.2d at p. 699; *Farwell v. Sunset Mesa Property Owners Assn., Inc.* (2008) 163 Cal.App.4th 1545, 1547 [78 Cal.Rptr.3d 666] (*Farwell*).) Although the individual plaintiff's claims have not been resolved, a decertification order "virtually demolishe[s] the case as a class action" and is "tantamount to a dismissal of the action as to all members of the class other than plaintiff." (*Daar, supra,* 67 Cal.2d at p. 699; see *Farwell, supra,* 163 Cal.App.4th at p. 1547; *Alch v. Superior Court* (2004) 122 Cal.App.4th 339, 359–360 [19 Cal.Rptr.3d 29].) By contrast, an order *certifying* a class is not appealable because the action continues between the parties. (See *Farwell, supra,* 163 Cal.App.4th at p. 1547; *Alch, supra,* 122 Cal.App.4th at p. 360.) In this respect, a certification order is similar to an order overruling a demurrer. (*Morrissey v. City and County of San Francisco* (1977) 75 Cal.App.3d 903, 908 [142 Cal.Rptr. 527]; see *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 912–913 [55 Cal.Rptr.2d 724, 920 P.2d 669].)

Safaie recognizes the court's order denying his motion to recertify the class was interlocutory in the sense that it did not end his individual action. He nonetheless contends the order falls under the "death knell" exception to the final judgment rule. We disagree.

█ Unlike a denial of a class certification motion, the order denying recertification did not "end" the class case or dispose of the class allegations. Instead, when Safaie moved to recertify the class in June 2009, the class allegations had already been removed from the case (based on the trial court's decertification order and this court's affirmance of the order), and Safaie was the sole plaintiff in an individual action. Thus, the effect of the

challenged order was not to dismiss the action as to the members of the class, but it was to deny Safaie's request to insert class allegations back into his individual action. A denial of this request did not serve as a death knell to Safaie's individual action because the complaint already existed as an individual action. (See *Figueroa v. Northridge Hospital Medical Center* (2005) 134 Cal.App.4th 10, 13 [35 Cal.Rptr.3d 677] [denial of motion to amend complaint to "add class allegations" and "*transform*" action into a class action not appealable].) Safaie's motion to recertify the class was essentially a request to reconsider the court's prior order based on asserted new law. Generally, a denial of a reconsideration motion is not appealable. (*Annette F. v. Sharon S.* (2005) 130 Cal.App.4th 1448, 1459 [30 Cal.Rptr.3d 914]; *Reese v. Wal-Mart Stores, Inc.* (1999) 73 Cal.App.4th 1225, 1242 [87 Cal.Rptr.2d 346].)

Safaie alternatively requests that if we determine the order is not appealable, this court should consider his appellate contentions by construing the appeal as a petition for extraordinary writ. We conclude the case is appropriate for this treatment, and thus deny Jacuzzi's motion to dismiss. (See *Olson v. Cory* (1983) 35 Cal.3d 390, 400–401 [197 Cal.Rptr. 843, 673 P.2d 720]; *H. D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1366–1367 [118 Cal.Rptr.2d 71]; *Coronado Police Officers Assn. v. Carroll* (2003) 106 Cal.App.4th 1001, 1006 [131 Cal.Rptr.2d 553].) The appellate record and briefing are complete. There is no indication the superior court needs to be a party to the action, and the specific arguments asserted by Safaie have not been addressed in a reported decision. There is no prejudice to the parties in deciding the issues on a writ petition. Under these circumstances and to promote judicial economy, it is appropriate to consider the issues at the present time.

## II. *Court Properly Denied Motion to Recertify Class Action*

Safaie contends the court erred in denying his motion to recertify the class. We determine the court properly denied Safaie's motion based on the "state law policy" rule that a party is not entitled to bring a renewed motion for class certification after a court has issued a final order denying certification. (*Stephen, supra*, 235 Cal.App.3d at p. 811.) We thus do not reach Safaie's challenges to the court's alternate ground for denying the motion based on the law of the case doctrine.

### A. *Governing Law Does Not Permit Successive Motions for Class Certification*

In *Stephen*, the court held a party has no right to bring a second motion to certify a class after the court has denied the first motion and the time for

appeal has passed. (*Stephen, supra,* 235 Cal.App.3d at p. 811.) There, the trial court had initially entered an order denying the plaintiff's motion for class certification based on the absence of sufficient evidence supporting the necessary class elements. (*Id.* at pp. 809–810.) The plaintiff did not appeal, and the order became final. (*Id.* at p. 810.) Four months later, the plaintiff filed a second motion for class certification based on asserted new facts relevant to the class issues. (*Ibid.*) The defendant opposed the motion as untimely and not based on new facts. (*Ibid.*) The trial court denied the motion as untimely. (*Ibid.*)

■ The plaintiff appealed, and the reviewing court upheld the order.[3] (*Stephen, supra,* 235 Cal.App.3d 806.) The *Stephen* court reasoned that the plaintiff's attempt to renew his class certification motion was "directly at odds" with California's rule providing that a denial of class certification is appealable as a final order. (*Id.* at p. 814.) The court explained (1) an order denying class certification is appealable because "the order has 'the "death knell" effect of making further proceedings in the action impractical' "; (2) a plaintiff who fails to appeal from such an order "loses forever the right to attack it"; and therefore (3) a motion to recertify a class is tantamount to an improper and untimely challenge to a final order. (*Id.* at p. 811.) The court stated that the rule barring a plaintiff from bringing a second class certification motion "is the practical consequence of this state allowing direct appeals of death-knell orders. If the law allowed both those appeals *and* successive motions to certify, we could have endless appeals violating the state's policy against piecemeal appellate litigation."[4] (235 Cal.App.3d at p. 814.)

The *Stephen* court additionally held that Code of Civil Procedure section 1008, allowing reconsideration of an order, cannot be invoked to circumvent this bar. (*Stephen, supra,* 235 Cal.App.3d at pp. 816–818.) "Otherwise, the disposition of the action would only be as to the particular state of facts presented when the prior motion was denied. New appealable orders could result each time new facts were offered. This would pose an intolerable expansion of the right to appeal . . . ." (*Id.* at p. 817.)

*Stephen* was decided more than 20 years ago, and, as recognized by numerous commentators, its holding is now embedded in our state's jurisprudence and remains the governing rule in California. (See Cohelan on Cal. Class Actions (2010–2011 ed.) § 7:15, pp. 208–209; Eisenberg et al., Cal.

---

[3] The court apparently assumed, without discussion, the appeal was from an appealable order. We have reached a different conclusion. (See Discussion, pt. I., *ante.*)

[4] The court noted the rule is different in federal courts because under the Federal Rules of Civil Procedure, a denial of a class certification motion is not directly appealable and must await a final judgment in the action. (*Stephen, supra,* 235 Cal.App.3d at pp. 811–812; see Fed. Rules Civ.Proc., rule 23, 28 U.S.C.)

Practice Guide: Civil Appeals and Writs (The Rutter Group 2010) ¶ 2:39a, pp. 2-25 to 2-26 (rev. # 1, 2010); 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 314, p. 433.)

█ We agree with *Stephen*'s holding and find its rationale persuasive. To ensure fairness to the class action plaintiff, trial courts are required to liberally grant continuances and ensure a plaintiff has the opportunity to make a complete record before the court rules on class certification. (See *Stephen, supra*, 235 Cal.App.3d at pp. 814–815.) Once the record is complete, if the trial court issues a final order denying a class certification motion in its entirety, the plaintiff has the right to seek immediate appellate review and to obtain a written ruling from a Court of Appeal on the disputed issues, and then, if dissatisfied, to petition for review in the California Supreme Court. Thus, unlike the situation with most interlocutory orders, the plaintiff is provided the right to an immediate appeal even though the case is still pending. However, this special status has a necessary ramification: once the appellate period has passed or once the appellate court has affirmed the order and a remittitur has issued, the order is final and the plaintiff is bound by the final decertification decision. (See *Guenter v. Lomas & Nettleton Co.* (1983) 140 Cal.App.3d 460, 465 [189 Cal.Rptr. 470]; *Morrissey v. City and County of San Francisco, supra*, 75 Cal.App.3d at pp. 906–908.) Permitting a party to circumvent the binding nature of a final decertification order would allow continuous renewal motions and repetitive appeals, prolonging the uncertainty in the litigation and creating unnecessary expense to the parties and the court. These consequences are inconsistent with the finality principles fundamental to our judicial system.

### B. *Safaie's Appellate Contentions Seeking to Avoid the Finality Bar*

Safaie raises several arguments in an attempt to persuade us to adopt a different rule that permits successive class certification motions after a final order denying certification. We find these contentions unpersuasive. Additionally, even if we were to agree that a court retains the discretionary authority to consider a second class certification motion after a final order denying certification, the circumstances in this case do not support the exercise of this discretion.

First, Safaie argues that California law *does* permit renewals of class certification motions, citing *Occidental Land, Inc. v. Superior Court* (1976) 18 Cal.3d 355 [134 Cal.Rptr. 388, 556 P.2d 750], in which the court stated that "[o]ur decisions clearly contemplate the possibility of successive motions concerning certification." (*Id.* at p. 360; see also *Weinstat v. Dentsply Internat., Inc.* (2010) 180 Cal.App.4th 1213, 1226 [103 Cal.Rptr.3d 614].) However, *Occidental Land* made this statement in the context of approving a court's

authority to consider successive motions challenging an order *certifying* a class. (*Occidental Land, supra,* 18 Cal.3d at p. 360.) As the *Stephen* court recognized, when a court certifies a class, the order is not final and cannot be appealed because the action continues between the parties. (*Stephen, supra,* 235 Cal.App.3d at pp. 813–814; see *Estrada v. RPS, Inc.* (2005) 125 Cal.App.4th 976, 986 [23 Cal.Rptr.3d 261].) Thus, unlike a class action plaintiff, a defendant who obtains an adverse certification ruling must generally accept the rule, litigate the matter as a class action, and raise the issues after the final judgment. Because the proceedings continue, "[t]he rule against successive motions does not . . . apply to [class action] defendants, who may make any number of motions to decertify" based on new facts elicited during discovery.[5] (Cohelan on Cal. Class Actions, *supra,* § 7:17, p. 210.)

We also find unhelpful Safaie's reliance on facts in *Tobacco II* showing the trial court had initially denied a motion for certification on one claim alleged in the complaint, but then granted the motion to certify claims in an amended complaint. (*Tobacco II, supra,* 46 Cal.4th at pp. 307, 309, fn. 4.) First, because the issue of recertification was never raised in the *Tobacco II* case, it is not authority for the asserted proposition. (*Cardinal Health 301, Inc. v. Tyco Electronics Corp.* (2008) 169 Cal.App.4th 116, 133 [87 Cal.Rptr.3d 5].) Moreover, the factual circumstances in *Tobacco II* are consistent with our holding. Because the first order denying class certification pertained to only one of the claims alleged in the complaint, it did not dispose of all claims between the parties, and thus was not a final, binding appealable order. (See *Shelley v. City of Los Angeles* (1995) 36 Cal.App.4th 692, 695–696 [42 Cal.Rptr.2d 529].) Thus, the plaintiff was free to seek certification on other causes of action alleged in the newly amended complaint.

■   Safaie additionally argues that *Stephen* is inapplicable because "[u]n-like the plaintiff in *Stephen,* here Safaie *did* timely appeal" the earlier decertification order. However, this is a distinction without a difference. The logic of *Stephen*'s holding applies regardless whether a plaintiff appeals the initial ruling. (*Stephen, supra,* 235 Cal.App.3d at pp. 813–816.) *Stephen*'s crucial point is that because a motion decertifying a class is considered a "death knell" order it must be timely challenged, and, if the order is not reversed on appeal, the order becomes final and effectively removes the class allegations from the complaint. (*Ibid.*) Thus, a final order denying certification bars a later motion seeking class certification if the order is not challenged *or* if the order is challenged and upheld on appeal.

---

[5] This distinction makes sense because later discovery may reveal facts showing the class procedure is inappropriate. At this point, the court has the discretion to alter its earlier rulings because the earlier order was not final. However, where a court has *denied* class certification in a final order, the litigation moves forward *without* additional class discovery, and the members of the former class presumably would have been aware of the need to seek other avenues of recovery.

■  Safaie further argues that *Stephen* is distinguishable because this case involves a claimed change in the governing law, rather than new facts. However, the rationale underlying the bar to successive class certification motions—that the plaintiff does not have a second opportunity to litigate the class issue once it obtains a final ruling—governs regardless of the reasons motivating the second certification motion. (See *Stephen, supra*, 235 Cal.App.3d at pp. 811–816.) In this regard, we reject Safaie's argument that the finality bar is unnecessary because the law of the case doctrine serves to prevent successive appeals on the same subject absent a change in the intervening law. As Safaie acknowledges in his opening brief, the doctrines serve different purposes: "Both the law of the case doctrine and the general appellate rule underlying *Stephen* serve important, *yet distinct*, functions within appellate law practice." (Italics added.) The broader finality rule bars any additional challenges to a denial of certification once the denial has become final, whereas the law of the case doctrine prevents only certain challenges to a legal principle that has already been decided. (See *People v. Boyer* (2006) 38 Cal.4th 412, 442 [42 Cal.Rptr.3d 677, 133 P.3d 581].)

■  Moreover, Safaie's reliance on *Le Francois v. Goel* (2005) 35 Cal.4th 1094 [29 Cal.Rptr.3d 249, 112 P.3d 636] is misplaced. In *Le Francois*, the court held Code of Civil Procedure section 1008 did not preclude a trial court from reconsidering its *"interim rulings"* on its own motion. (*Le Francois, supra*, at p. 1107, italics added.) In so holding, the court did not state or suggest a trial court has the authority to reconsider *final orders* after they have been affirmed on appeal.

Safaie additionally contends the death knell doctrine is "merely a *procedural mechanism*" for providing the immediate right to appellate review, and did not remove the court's jurisdiction to rule on the issues or its broad discretionary authority to certify a class.

We agree the trial court retained jurisdiction, in the fundamental sense, over the case and thus had the authority to issue legal and equitable rulings on all issues presented by the parties. In this respect, this case differs from *Griset, supra*, 25 Cal.4th 688, relied upon by Jacuzzi. In that case, the California Supreme Court held the trial court had no jurisdiction to rule on a renewed motion after an appeal because the entire case had been effectively disposed of by a final judgment. (*Id.* at pp. 700, 701–702.) However, in Safaie's case, the court's jurisdiction continued after the prior appeal because the appeal pertained to a limited order rather than to a final judgment disposing of all issues in the case. But the fact the court's *jurisdiction* over the case continued after the remittitur does not undermine the applicability of the *Stephen* rule. Contrary to Safaie's contention, the rule is not merely "procedural"; it implements an important policy of jurisprudence in this state that a

party has one opportunity to appeal from a final judgment or from a final order construed to be a final judgment.

■ In reaching this conclusion, we recognize trial courts have broad discretion to determine the propriety of class actions, including being procedurally innovative in certifying an appropriate class and in formulating procedures to ensure fairness and avoid manifest injustice in class action litigation. (See *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 339 [17 Cal.Rptr.3d 906, 96 P.3d 194].) Moreover, a court has the discretion to move sua sponte to certify a class. (See *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 453–454 [115 Cal.Rptr. 797, 525 P.2d 701].) However, to the extent there may be equitable exceptions to the rule precluding successive class certification motions after a final order denying certification, the circumstances here do not come within this exception.

In decertifying the class in June 2007, the trial court found Safaie did not meet his burden to show the requisite elements of a class action for the asserted claims, including commonality among class members on the reliance issue. Safaie challenged this holding on appeal, and argued that standing requirements for absent class members had not changed from pre-Proposition 64 standards. At the time, the appellate courts had reached different conclusions on the issue. In our prior decision, we upheld the court's exercise of discretion, and additionally found that even under pre-Proposition 64 standards, the trial court did not err in decertifying the class. (*Safaie I, supra,* D051511.) When we filed the *Safaie I* decision, the issue pertaining to standing requirements applicable to absent class members was before the California Supreme Court in *Tobacco II*; the matter had been fully briefed; and the high court had granted and held petitions for review in three other cases raising similar issues. (See *Tobacco II, supra,* 46 Cal.4th 298.) Thus, if Safaie had wished to pursue his rights to assert his interpretation of Proposition 64 and that the trial court erred under that interpretation, he could have filed a petition for review with the California Supreme Court.

■ On this record, there is nothing fundamentally unfair or inequitable about a rule precluding Safaie from seeking reconsideration of the trial court's decertification ruling at this late date. Because Safaie had the opportunity to assert the precise legal issue he is raising in his renewal motion by filing a petition in the California Supreme Court, there is no basis for creating an exception to the settled state law rule that a final order decertifying a class is binding and cannot be later challenged in the trial court by a motion for renewal or reconsideration.

## DISPOSITION

Appeal is treated as a petition for writ of mandate. The petition is denied. Respondents shall recover their costs on appeal.

McDonald, J., and O'Rourke, J., concurred.

A petition for a rehearing was denied February 22, 2011, and appellant's petition for review by the Supreme Court was denied April 27, 2011, S191219.